UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

CASE NO.: 13-12391-BB

KENETH DOWNER, et. al.
Plaintiff/Appellant

vs.

ROYAL CARIBBEAN CRUISES LTD.
Defendant/Appellee

Appeal from the United States District Court for the Southern District of Florida,
Docket # 1:11-cv-21948

**APPELLANTS' INITIAL BRIEF**

CARLOS FELIPE LLINÁS NEGRET
LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
Attorneys for Appellant/Plaintiff
2 South Biscayne Tower, Suite 1776
Miami, Florida 33131
Telephone: (305) 373 – 3016
Facsimile: (305) 373 – 620

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record for Petitioner, in compliance with Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, certifies that the following listed persons, parties, and corporations have an interest in the outcome of this appeal.

Keneth Downer

Richard Graham Young

Roan Drumond Scout

Cliff Fitz Patrick

Auzzie Duane Dabrell

Fitzroy Lloyd Johnson

Stanley Armando Mullings

Gregory Hughes

Royal Caribbean Cruises Ltd.

Lipcon, Margulies, Alsina & Winkleman P.A.

Charles R. Lipcon, Esq.

Jason R. Margulies, Esq.

Ricardo V. Alsina, Esq.

Michael A. Winkleman, Esq.

Carlos Felipe Llinás Negret, Esq.

Eric Morales, Esq.

Holland & Knight LLP

Scott Ponce, Esq.

Sanford Bohrer

## STATEMENT REGARDING ORAL ARGUMENT AND PETITION FOR *EN BANC* REVIEW

I express a belief, based upon reasoned and studied professional judgment that this proceeding involves questions of exception public importance, warranting oral argument and *en banc* review:

The outcome of this appeal will affect the lives of thousands of seafarers who work onboard cruise ships in U.S. ports, for American-based cruise lines. The district court's decision leaves these seafarers vulnerable to exploitation such as substandard wages (approximately $1 per day), sweatshop-like working conditions, forced labor and modern forms of slavery.

**First**, Royal Caribbean did not present copies of written arbitration agreements signed by the Plaintiffs,[1] a prerequisite to arbitration under Article II of the Convention Act. The district court's ruling impermissibly imposes arbitration even if written arbitration agreements between the parties do not exist. Allowing cruise lines to arbitrate disputes without presenting copies of signed arbitration agreement conflicts with binding Eleventh Circuit precedent under *Czarina v. W.F. Poe Syndicate,* 358 F. 3d 1286 (11th Cir. 2004), and the express language of Article II of the Convention Act, 9 U.S.C. §203.

---

[1] Throughout the course of this brief, the Plaintiff-Appellants will also be referred to as the "the Seafarers."

**Second**, the district court's ruling conflicts with recent United States Supreme Court precedent under *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985) and *American Express Co. v. Italian Colors Restaurant*, __ U.S. ___ (2013), 133 S.Ct. 2304 (2013). These cases hold that arbitration agreements that include foreign choice-of-law clauses are void as against public policy because they prospectively waive a litigant's right to pursue U.S. statutory remedies. Here, because Royal Caribbean's arbitration clause requires the application of Norwegian law at arbitration, it is unenforceable under *Mitsubishi Motors* and *American Express.*

The public policy concerns raised by the Supreme Court in *Mitsubishi Motors* and *American Express* are particularly relevant to seafarers. Since the foundation of the Republic, "[t]he policy of Congress, as evidenced by its legislation, has been to deal with [seamen] as a favored class." *Bainbridge v. Merchants' & Miners' Transp. Co.,* 287 U.S. 278 (1932).[2] Further, as the Fifth Circuit explained in *Castillo v. Spiliada Maritime Corp.*, 937 F. 2d 240, 243 (5th Cir. 1991), "[h]istorically, seamen have enjoyed a special status in our judicial system. They enjoy this status because they occupy a unique position. A seaman isolated on a ship on the high seas is often vulnerable to the exploitation of his employer. Moreover, there exists great

---

[2]     Congress first enacted laws to protect the wages of seafaring employees in 1790. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 64, 572-73 (1982). The statute, referred to as the "Seaman's Wage Act," was recodified in 1983 at 46 U.S.C. §10313.

inequality in bargaining position between large ship-owners and unsophisticated seamen." *Id.* at 243. Thus, "[t]o shield seamen against unfair conduct by ship-owners, Congress enacted special protection statutes.

For instance, Congress enacted the Jones Act to give seafarers a cause of action for negligence against employers who fail to provide a safe work environment. Congress also enacted the Seaman's Wage Act, to prevent employers from indiscriminately withholding a seafarer's wages.

Now, suddenly, two hundred years of Congressional statutory rights are being wiped-out. To circumvent their obligations under United States law, cruise lines are drafting mandatory arbitration provisions that prohibit seafarers from filing claims under U.S. law, and requiring them to arbitrate under the laws of a foreign jurisdiction. In this case, Royal Caribbean's arbitration clause provides that all causes of action must be brought under Norwegian law. This is the type of "prospective waiver of statutory rights" described by the Supreme Court in *Mitsubishi Motors* and *American Express*. Put simply, arbitration cannot take from the seafarers, the rights that Congress specifically vested on them.

Most troubling is the fact that Royal Caribbean selected foreign law which *does not apply* to the Plaintiffs. As shown below, Norwegian law expressly provides that it does not apply to "foreign cruise line workers." Rather, it only applies to Norwegian citizens and residents (Plaintiffs' are neither), Therefore, if the Plaintiffs

arbitrate their claims **they will get nothing**. This result is inconsistent with this Court's prior precedent. *See Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th Cir. 1998) (An arbitration agreement is unenforceable if it deprives Plaintiff of any meaningful relief).

All in all, the district court's decision gives Royal Caribbean *carte blanche* and emboldens it to exploit its labor force with impunity in the United States. This inevitably leads to the creation of an underclass of workers, who now find themselves in legal limbo and without recourse. The district court's decision leaves these seafarers vulnerable to their employer's abuse, and opens the door to exploitation such as substandard wages, sweatshop-like working conditions, forced labor and indentured servitude. Such an end result is contrary to public policy, in light of the special protections afforded to seafarers for over two hundred years in this country,

**Third**, the district court relied on *Lindo v. NCL*, 652 F.3d 1257 (11th Cir. 2011) for the proposition that the subject arbitration clause was valid. *Lindo*, however, directly conflicts with *Thomas v. Carnival*, 573 F. 3d 113 (11th Cir. 2009),[3] a prior panel opinion from this Court. Under the prior panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled

---

[3] *Thomas*, quoting the Supreme Court's *Mitsubishi Motors* decision, held that a cruise line arbitration provision requiring foreign law at arbitration, was void as against the public policy of the United States, because it forced a seafarer to waive his American statutory rights.

or undermined to the point of abrogation by the Supreme Court or this Court *en banc*." *United States v. Archer,* 531 F. 3d 1347 (11th Cir. 2008). The *Lindo* panel disregarded *Thomas* in violation of the prior panel precedent rule.  *See Pavon v. Carnival Corporation,* 11-cv-23148 (Lenard, J.) ("The Court further notes that as a panel opinion, *Lindo* cannot overrule *Thomas* as the law of this Circuit; that may only be done by the Eleventh Circuit *en banc*").

More importantly, this Court is bound by *Thomas* – not *Lindo* – under the "earlier in time panel doctrine." *See United States v. Ohayon*,  483 F. 3d 1281, 1289 (11th Cir. 2007) ("When a decision of this Court conflicts with an earlier decision that has not been overturned *en banc*, we are bound by the earlier decision); *United States v. Hornaday,* 392 F. 3d 1306, 1316 (11th Cir. 2004) ("Where there is a conflict between a prior panel decision and those that came before it, we must follow the earlier ones").

*Carlos Felipe Llinás Negret*_____
CARLOS FELIPE LLINÁS NEGRET
**Counsel for Petitioners**

# TABLE OF CONTENTS

Page(s)

STATEMENT REGARDING ORAL ARGUMENT……………………………….. ii

TABLE OF CONTENTS ……………………………………………..…………vii

TABLE OF AUTHORITIES ………………………………………………...x

STATEMENT OF JURISDICTION ……………………………………....1

STATEMENT OF THE ISSUES ……………………………………………….4

STATEMENT OF THE CASE AND FACTS ………………………………… 5

STANDARD OF REVIEW …………………………………………………... 14

SUMMARY OF ARGUMENT …………………………………………… 10

ARGUMENT ……………………………………………………..14

I.    PLAINTIFFS ARE SEAFARERS. SEAFARERS ARE WARDS OF THE
      ADMIRALTY COURTS AND A HISTORICALLY PROTECTED CLASS
      BY CONGRESS ……………………………………………………….. 14

II.   AN AMERICAN CRUISE LINE WHICH SUBJECTS ITS SEAFARERS TO
      WORKING CONDITIONS RESEMBLING SLAVERY SHOULD NOT BE
      ALLOWED TO ADJUDICATE ITS DISPUTES IN ARBITRATION: 1) IN
      THE ABSENCE OF WRITTEN AND SIGNED ARBITRATION
      AGREEMENTS AND 2) WHERE THE SUBSTANTIVE LAW OF THE
      ARBITRATION (NORWEGIAN LAW) DEPRIVES THE SEAFARERS OF
      ANY RELIEF..............................................................................16

      A.    As a preliminary matter, pursuant to binding Supreme Court precedent
            under *Granite Rock Co., v. International Broth. of Teamsters*, 130 S.
            Ct. 2847 (2010), there is <u>*no*</u> "federal policy in favor of arbitration" if
            the formation of the parties arbitration agreement, its enforceability or
            application, is at issue…………………………………………… 16

B.    The existence of a valid arbitration provision is at issue in this case. In support of its motion to compel arbitration, Defendant RCCL failed to produce copies of signed written arbitration agreements as to six of the Plaintiffs. As a result, RCCL failed to satisfy the agreement-in-writing prerequisite under the Convention.  Pursuant to binding Eleventh Circuit precedent, therefore, the district court did not have subject matter jurisdiction to compel this matter to arbitration.................17

      i.    Because Royal Caribbean failed to comply with the agreement-in-writing prerequisite under Article II of the Convention, the district court did not have subject matter jurisdiction to compel this case to arbitration..............................................................19

      ii.    Royal Caribbean cannot circumvent the jurisdictional prerequisites of the Convention. The agreement-in-writing requirement is mandatory.............................................................22

      iii.   The filing of affidavits or generic contracts also does not satisfy the agreement-in-writing requirement under the Convention.........26

C.    The arbitral provision's choice of law clause, requiring Norwegian law as the substantive law of the arbitration, deprives Plaintiff of any meaningful relief and is therefore unenforceable pursuant to *Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th Cir. 1998)..28

      i.    Norwegian law does not recognize Plaintiffs' U.S. statutory rights pursuant to the Seaman's Wage Act, (46 U.S.C. §10313, 46 U.S.C. §10504). Additionally, Norwegian law does not offer comparable remedies to the U.S. Seaman's Wage Act.......................... 31

D.    Pursuant to binding United States Supreme Court precedent established in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985), RCCL's arbitration provision is void as against public policy. The foreign choice of law provision and foreign venue selection provision operate in tandem as a prospective waiver of Plaintiff's statutory rights................................................................. 36

     i.     This Honorable Court recognized the Supreme Court's "prospective waiver" doctrine of *Mitsubishi*, in *Thomas v. Carnival*, 573 F. 3d 113 (11th Cir. 2009), and declared an identical provision void as against public policy……………..38

E.     The Eleventh Circuit's decision in *Bautista v. Star Cruises,* 396 F. 3d 1289, 1294 (11th Cir. 2005) does not control the outcome of this case. Contrary to the Honorable Court's ruling below, *Thomas* does not conflict with *Bautista. Bautista* predates *Thomas* and did not address the issue of whether a contract that calls for application of only foreign law in arbitration is void as against public policy……………….... 40

F.     Subsequent to *Thomas*, this Honorable Court decided *Lindo v. NCL*, 652 F.3d 1257 (11th Cir. 2011). *Lindo*, however, is an advisory opinion not binding on this Court. Before the Eleventh Circuit issued its mandate in *Lindo*, the parties in *Lindo* settled and moved to voluntarily dismiss the appeal. Controlling precedent holds that when a case settles before the end of the appellate process, any opinion that has been produced should be vacated. The opinion in *Lindo* should therefore be vacated………………………………………………………………… 43

     i.     *Lindo* was a panel opinion and therefore cannot purport to overturn *Thomas*. Pursuant to the prior panel precedent rule, *Thomas v. Carnival* is still the law of this Circuit: neither the Eleventh Circuit *en banc* nor the United States Supreme Court has overruled *Thomas*………………………………………….. 44

     ii.     *Lindo* conflicts with *Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th Cir. 1998). *Lindo* further ignores controlling Supreme Court precedent in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985); *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970)……………... 45

G.     If appellants are required to arbitrate their claims, they will not receive no award in the arbitral forum –given the U.S. based nature of their claims…………………………………………………………… 47

CONCLUSION………………………………………………………...48

CERTIFICATE OF COMPLIANCE …………………………………….48

# TABLE OF AUTHORITIES

Page(s)

*AT&T Technologies, Inc. v. Communications Workers of American*,
475 U.S. 643, 648 (1986) ………………………………………………..… 10, 17

*Bautista v. Star Cruises*,
396 F.3d 1289, 1295 n. 7 (11th Cir. 2005) ………… 1, 9, 10, 14, 20, 23, 40, 41, 42

*Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*,
713 F. 2d 618, 621 (11th Cir. 1983)…………………………………………….24

*Brenner v. Miller*, 2009 WL 1393420 (S.D. Fla. 2009)………………………… 25

*Castel v. Clear Channel Broadcasting, Inc.*,
 254 F. Supp. 2d 1081 (W.D. Ks. 2003)………………………………………… 21

*Castillo v. Spiliada Maritime Corp.*,
937 F. 2d 240, 243 (5th Cir. 1991)……………………………….…..3, 10, 15, 38

*Cooper v. Meridian Yachts, Ltd.,* 575 F. 3d 1151 (11th Cir. 2009)…………….... 24

*Czarina, L.L.C. v. W.F. Poe Syndicate*,
358 F. 3d 1286, 1291 (11th Cir. 2004)……………….………… 2, 10, 11, 19, 20, 23

*Flagship Marine Services, Inc. v. Belcher Towing Co.*,
 23 F. 3d 341 (11th Cir. 1994)…………………………………………………. 9

*Granite Rock Co., v. International Broth. of Teamsters*,
 130 S. Ct. 2847 (2010)………………………………………………….. 11

*Hergenderer v. Bickford Senior Living*, 656 F. 3d 411 (6th Cir. 2011) ………… 15

*Hooters of America, Inc., v. Hooters of Lakeland, LLC.*,
2006 WL 1793541 (M.D. Fla. 2006) ……………………………………… 17

*Intergen N.V. v. Grina*, 344 F. 3d 134 (1st Cir. 2003) ………………………….. 15

*Key Enterprises, Inc. v. Venice Hospital*, 9 F. 3d 893 (11th Cir. 1993) ………….. 9

*Lee v. Red Lobster Inns of America,* 92 Fed. Appx. 158 (6th Cir. 2004) ………... 15

*Lindo v. NCL*, 652 F.3d 1257 (11th Cir. 2011)……………………..…… 9, 14, 25

*Lyster v. Ryan's Family Steak Houses, Inc.,*
239 F. 3d 943, 945 (8th Cir. 2001)…………………………………………… 14

*Love v. Turlington*, 733 F. 2d 1562 (11th Cir. 1984)…………………………. 19

*Mendez, et. al. v. Puerto Rican International Companies, Inc.,*
553 F. 3d 709 (3d Cir. 2009) …………………………………………………… 14

*Molsbergen v. U.S.,* 757 F. 2d 1016 (9th Cir. 1985)…………………………. 17

*Nissan North America v. Jim M'Lady Oldsmobile,*
 486 F. 3d 989 (7th Cir. 2007) …………………………………………………... 15

*Paladino v. Avnet Computer Technologies, Inc.,*
134 F. 3d 1054 (11th Cir. 1998)……………………………… 9, 20, 21, 22, 24, 25

*Perez v. Globe Airport Security, Service, Inc.,*
294 F. 3d 1275 (11th Cir. 2002)………………………………………….…… 9

*Thomas v. Carnival*, 573 F. 3d 113 (11th Cir. 2009)……………………………. 9

*United States v. Smith,* 122 F. 3d 1344, 1359 (11th Cir. 1997)………..… 13, 20, 25

*U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355 (1971)…………..….. 7

*Wallis v. Princess Cruises, Inc.,* 306 F. 3d 827 (9th Cir. 2002)…………..….. 23

## Federal Statutes

9 U.S.C. §1…………………………………………………………………….. 28

9 U.S.C. § 205……………………………………………………………… 9

9 U.S.C. § 206…………………………………………………………….. 19, 48

9 U.S.C. § 207…………………………………………………………....19, 48

45 U.S.C. § 51………………………………………………………………… 20

46 U.S.C. § 30104……………………………………………………... 3, 13, 17

18 U.S.C. §1595 …………………………………………………………3, 17

## **Foreign Law**

Norway's Seaman's Act of 30 May 1975 ………………………………… 32 – 34

<u>**STATEMENT OF JURISDICTION**</u>

**I.    This Court has jurisdiction to review any final decision with respect to arbitration. A decision is final if the district court does not stay the case or retains jurisdiction. Therefore, this court has jurisdiction when the district court dismisses the case, leaving the court nothing to do but to execute judgment.**

As a preliminary matter, this Court has jurisdiction over this appeal by virtue of the Federal Arbitration Act (FAA), 9 U.S.C. §16(a)(3). *See Green Tree Financial Corp. v. Randolph*, 531 U.S. 79 (2000):

> Section 16(a)(3) … preserves immediate appeal of any 'final decision with respect to an arbitration,' regardless of whether the decision is favorable or hostile to arbitration. And as petitioners and respond agree, the term "final decision" has a well-developed and longstanding meaning. It is a decision that ends the litigation on the merits and leaves nothing more for the court to do but to execute the judgment. The district court's order directed that the parties' dispute be resolved by arbitration and dismissed respondent's claims with prejudice, leaving the court nothing to do but to execute the judgment. That order plainly disposed of the entire case and left no part of before the court. The district court's order was therefore "a final decision with respect to arbitration" within the meaning of §16(a)(3), and an appeal may be taken.
>
> [Ft. 2] **Had the District Court entered a stay instead of a dismissal in this case, that order would not be appealable**. 9 U.S.C. § 16(b)(1).

Id., at 84- 87 (emphasis added); *Jackson v. Cintas Corp.,* 425 F. 3d 1313 (11th Cir. 2005):

> The Federal Arbitration Act (FAA) allows an immediate appeal from "any final decision with respect to arbitration." 9. U.S.C. §16(a)(3). A decision is final within the meaning of section 16(a)(3) where the court "disposes of the entire case on the merits and l[eaves] no part of it pending before the court." When it compelled arbitration, dismissed the complaint and entered

1

a judgment, the district court resolved "the entire case on the merits; no issues remained before the court.

Id., at 1316 (emphasis added) (citations omitted).

Notably, in *Quiroz v. MSC Mediterranean Shipping Co.,* 2013 WL 3185470 (11th Cir. 2013) (unpublished), this Court held that it had jurisdiction to review a final decision compelling a seafarer's claims to arbitration. The decision was final for purposes of §16(a)(3) because "the district court [did not] retain jurisdiction to superintend the arbitration process." Instead, "[w]hen the district court granted the motion […] to dismiss [the] complaint and compel arbitration, [it] dismissed as moot all other motions pending, and directed the clerk to close [the] case."

**II.    In its initial order compelling the case to arbitration ECF No. 40, the district court stayed the case pending the outcome of the parties' arbitration. However, in a subsequent order dated May 24, 2013, ECF. No. 55 *the district court lifted the stay* and dismissed all claims with prejudice. This Court, therefore, now has jurisdiction over this appeal.**

Initially, the district court compelled the case to arbitration and stayed the case pending the outcome of the parties' arbitration, ECF No. 40.

On June 4th, 2012, the Plaintiffs filed a Notice of Appeal, ECF No. 41. Shortly thereafter, the Defendant moved to dismiss the appeal for lack of jurisdiction, arguing that, because the district court did not dismiss the Plaintiffs' claims, but

2

rather "stayed the case," the district court's order was an interlocutory Order for which 9 U.S.C. §16(b)(3) does not permit appellate review.

After the case was fully briefed, this Court Granted the Defendant's motion and dismissed the appeal. ECF No. 47.

As a result, on October 22, 2012, the Plaintiffs filed a Motion with the district court "To Lift Stay to Allow Appellate Review And/or Alternatively to Certify Matter for Interlocutory Appeal." ECF No. 48.

On May 24, 2013, the district court entered an Order Granting the Plaintiffs' Motion to Lift Stay or, Alternatively, to Certify for Interlocutory Appeal. ECF No. 55. In the May 24, 2013 Order, the district court specifically lifted the stay, dismissed the claims with prejudice and closed the case. *See* ECF No. 55: "**Accordingly, in light of Plaintiffs' request that the case be appealable, I now exercise my discretion to lift the stay and dismiss the claims**." Id., at pg. 4, *citing Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 86 (2000) (finding that an order compelling arbitration and dismissing the case disposed of the entire case on the merits and is a final decision and thus appealable pursuant to the Federal Arbitration Act). Therefore, the district court's order compelling arbitration, ECF No. 40, is now **final** and **appealable**, pursuant to 9 U.S.C. §16 (a)(3).[4]

---

[4] Alternatively, in the May 24, 2013 Order, the district court *also* granted the Plaintiffs request to certify this matter for interlocutory appeal. ECF No. 55. Therefore, the district court's order compelling the case to arbitration is also appealable pursuant to 28 U.S.C. §1292 (b).

## STATEMENT OF THE ISSUES

1.      Whether RCCL's Motion to Compel Arbitration should have been denied, because RCCL failed to produce written arbitration agreements, a prerequisite under Article II of the Convention?

2.      Whether pursuant to binding United States Supreme Court precedent under *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985) and *American Express Co. v. Italian Colors Restaurant*, __ U.S. ___ (2013), 133 S.Ct. 2304 (2013), RCCL's arbitration clause (requiring application of Norwegian law) at arbitration, is void as against public policy because it prospectively waives the Plaintiffs' right to pursue U.S. statutory rights?

3.      Whether application of Norwegian law at arbitration, which expressly does not apply to "foreign cruise line workers" (but rather only Norwegian citizens and residents), deprives the Plaintiffs of remedies under Norwegian law (and therefore all remedies at arbitration)?

4.      Whether it is contrary to the public policy of the United States to allow seafarers, victims of forced labor and draconian wage deductions, to be left destitute and without legal recourse?

## STATEMENT OF THE CASE

**1.    The Seafarers' Wages.**

This case involves a labor dispute between Royal Caribbean Cruises Ltd. ("RCCL") and it's Stateroom Attendants, regarding RCCL's failure to pay the stewards their full wages from May 27, 2008 to the present.

As Stateroom Stewards, Plaintiffs were responsible for hundreds of tasks, including but not limited to the cleaning and sanitation of rooms, and distribution of luggage to passengers. [R.E. Tab 2, ¶9]. Typically, they provided these services to approximately forty-five (45) passengers daily. *Id.,* ¶10.

The Plaintiffs' compensation under the employment agreements with RCCL consisted almost entirely of tips received from passengers.  Under the contract, RCCL only paid $50 per month to the Plaintiffs directly as wages.[5] The rest of the Plaintiffs' compensation was comprised of gratuities provided by passengers. *Id.,* ¶11. The employment contract, required Defendant RCCL to charge passengers the gratuities to be paid to Stateroom Attendants. *Id.,* ¶12.

At the end of every cruise, RCCL collected Stateroom Attendant gratuities from the passengers. These collected gratuities were in turn distributed by RCCL to the Stateroom Attendants. *Id.,* ¶13. In total, Plaintiffs were entitled to receive gratuities amounting to $3.50 per passenger, per day. *Id.* Thus, for a seven day cruise,

---

[5] This averages to one-dollar and 67 cents ($1.67) per day.

5

Plaintiffs were entitled to receive in wages approximately $1,102.50 for forty-five

45 passengers served, or $24.50 per passenger. *Id.,* ¶14.[6]

## 2. RCCL's first illegal scheme: Exploiting the Plaintiffs by requiring them to pay for assistants out of their own wages.

RCCL's first scheme consisted in requiring the Plaintiffs to hire extra workers

and to pay them out of Plaintiffs' own wages, such that the Plaintiffs were denied

their full wages.  [R.E. Tab 2, ¶53].

During the relevant period, RCCL assigned each Stateroom Steward an

amount of work which Plaintiffs – on their own - could not feasibly complete in the

time allotted by RCCL, without additional help. As a result, Plaintiffs 1) were forced

to hire other crew members (hereinafter referred to as "helpers"), and 2) were forced

to pay for these helpers out of their own earned wages. *Id.,* ¶53. *See Wallace, et. al.*

*v. NCL (Bahamas) Ltd.,* 09-21814-CIV-JORDAN D.E. 295, pg. 3, *citing* D.E. 222,

at pg. 9 (A policy that forces employees to hire helpers raises a Seaman's Wage Act

claim).[7]

---

[6]     Pursuant to binding Eleventh Circuit Precedent, tips and/or gratuities are considered an essential part of a seafarer's "wages". *See Flores v. Carnival Cruise Lines,* 47 F. 3d 1120, 1125 (11th Cir. 1995) ("Wages" includes average tip income, at least where, as here, the employer and employee anticipate that tips will be a substantial part of the compensation received"). As such, any deprivation and/or withholding of a seafarer's earned tips and/or gratuities triggers a cause of action under the Seaman's Wage Act and General Maritime law of the United States.

[7]     The Seaman's Wage Act, 46 U.S.C. §10313, focuses on ensuring wage payment to seamen via a treble-damages wage-penalty provision assessed on employers for late wages. The "primary purpose of the Act" is to ensure that a seaman will be paid his wages promptly upon discharge in a U.S. port, and will not be turned ashore with nothing in his pockets" after his right to food and shelter is terminated. *Chung Yung II v. Overseas Navigation Co.,* 774 F. 2d 1043 (11th Cir. 1985).

**3.    RCCL's second illegal scheme: Forced labor and deprivation of wages.**

Starting on 2008, RCCL implemented another scheme consisting in requiring and/or forcing Plaintiffs to work, effectively without pay, in other sections of its ships. [R.E. Tab 2, ¶ 66(B)].

At that time, RCCL implemented a program referred to as the "Evolution of Housekeeping" to save money at the expense of the Stateroom Attendants. [R.E. Tab 2, ¶16(B)(v)(1)].

As part of the "Evolution of Housekeeping," RCCL created a rating system for Stateroom Attendants. Under the rating system, referred to as "Performance Management Tool," every two weeks, RCCL scored and/or graded the work performance of stateroom attendants. [R.E. Tab 2, ¶ 66(B)(i)].

The stateroom attendants with the lowest ranking scores were punished, temporarily demoted and forced to work, effectively without pay, for two weeks or more. *Id.,* ¶ 66(B)(ii).

During the demotion period, referred to as working at the "back of the house," RCCL required the Plaintiffs to clean and sanitize the rooms of other crewmembers. Because, unlike passengers, crewmembers are not required to tip or give gratuities

---

The purpose of the penalty wage statutes is to secure prompt payment of seaman's wages and thus protect them from the harsh consequences of arbitrary and unscrupulous action by their employers. *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 572 (1982).

to people cleaning their rooms; during the entire time that stateroom attendants were sent to work on the "back of the house" they received no gratuities and/or tips – and were thus effectively deprived of their wages.[8] *Id.,* ¶ 66(B)(v).

The implementation of the Evolution of Housekeeping was motivated solely to save RCCL money, by having people clean crew cabins effectively for free. [R.E. Tab 2, ¶16 (B)(v)(1)].

Indeed, as part of the "Evolution of Housekeeping," RCCL eliminated the positions and, thus, the cost of "Bell Attendants" and "Staff Attendants." These positions were previously tasked with the cleaning and sanitation of crewmember cabins. By phasing these positions out, and forcing Plaintiffs to take over these duties while they were sent to work on the "back of the house" **without gratuities**, RCCL financially benefited – incurring substantial savings from not having to pay for the work formerly performed by "Bell Attendants" and "Staff Attendants." *Id.,* ¶ 66(B)(v)(1)-(3).

---

[8]    As set forth above, Plaintiffs' compensation under the employment agreements with RCCL consisted almost entirely of tips received from passengers.  Under the contract, RCCL only paid $50 per month to the Plaintiffs directly as wages (or one-dollar and 67 cents ($1.67)), the rest of the Plaintiff's wages came from passenger tips. Therefore, while working at the "back of the house," the Plaintiffs were deprived of approximately $1,102.50 in tips every week. [R.E. Tab 2, ¶14].

As a result of RCCL's unlawful practices, the Plaintiffs brought claims against RCCL for Forced Labor and Peonage under 18 U.S.C. §1595[9] and the Seaman's Wage Act, 46 U.S.C. §10313.[10]

On June 28, 2010, RCCL filed a Motion to Compel Arbitration and two dismiss. [R.E. Tab 3].

On May 31, 2012, the District Court below, granted RCCL's Motion to Compel Arbitration. [R.E. Tab 4]. As shown below, the district's court's Order compelling arbitration should be reversed.

---

[9]     Pursuant to 18 U.S.C. §1595 (a) an individual who is a victim of "forced labor" and/or "peonage" may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act of forced labor and/or peonage) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees.

[10]     The exploitation of the Plaintiffs here is not uncommon in the cruise line industry. These workers, recruited in poor developing countries, are often exposed to sweatshop like conditions. *See* Rory Bahadur, *Constitutional History, Federal Arbitration and Seaman's Rights Sinking in a Sea of Sweatshop Labor*, Journal of Maritime Law and Commerce, 39 JMARLC 157 (2008). RCCL, like other cruise lines, hires foreign nationals to fill these positions. In doing so, using flags of convenience – it circumvents compliance with a number of federal labor statutes. Id.

The majority of new workers are drawn from under-industrialized countries in Asia, Eastern Europe, and Central America. They are seduced by the idea of getting paid to travel the world on cruise ships. However, the image is not the reality. As the International Transport Worker's Federation reports, "below decks on virtually all cruise ships, there is a hidden world of long hours, low pay, insecurity and exploitation. Those who work continuously below deck, like in the galleys rarely see the light of day, let alone the shimmering sea of the Caribbean. Id.

A flag of convenience allows an American corporation to operate an American-owned vessel under the laws of whatever country the American business owner chooses to register with. American business owners obviously register their ships under the flag of the country with the least restrictive labor and compensation laws and the most favorable laws for profit. The cruise lines exploit this legal loophole which allows them to **virtually expose cruise industry workers to "sweatshop" equivalent conditions.** Of course, the American-based cruise lines simultaneously benefit from the protections of American corporate law.  Id.

# <u>SUMMARY OF ARGUMENT</u>

The district court erred in granting RCCL's Motion to Compel Arbitration.

The implications of this appeal could not be more clear: should a U.S. based cruise line (Royal Caribbean) that subjects its seafarers to working conditions resembling slavery be allowed to take its employment disputes to arbitration: 1) in the absence of written arbitration agreements signed by the Plaintiffs; and 2) where the Plaintiffs are left without remedies because the substantive law required at arbitration (Norwegian law), only applies to Norwegian residents and citizens? **The answer is <u>no</u>.**

**First**, Royal Caribbean failed to satisfy the agreement-in-writing prerequisite under the Convention Act. It is undisputed that there is <u>no</u> record evidence that the Seafarers signed arbitration agreements or ever agreed to submit their disputes to arbitration. Indeed, RCCL failed to produce copies of the arbitration agreements signed by Plaintiffs Kenneth Downer, Richard Graham Young, Roan Drumond Scott, Auzzie Duane Dabrell, and Stanley Armando Mullings. In the absence of these signed agreements, RCCL failed to meet its burden to prove the existence of valid agreement to arbitrate between Plaintiffs and RCCL during the claim period of May 27, 2008 to the present.

The district court's order compelling arbitration without requiring Royal Caribbean to provide written arbitration agreements signed by the Seafarers,

conflicts with binding Eleventh Circuit precedent and the express requirements of the Convention Act. *See Czarina, L.L.C. v. W.F. Poe Syndicate,* 358 F. 3d 1286 (11th Cir. 2004):

> Article II of the Convention imposes a prerequisite on a party asking the court to compel arbitration: it requires that the party bring the court the written agreement. Convention, art. II, 9 U.S.C. §201 … Where a party has failed to satisfy the agreement-in-writing requirement, courts have dismissed the action for lack of jurisdiction.

Id., at 1291. On these grounds alone, the district court should have denied Royal Caribbean's Motion to Compel Arbitration.

**Second**, the arbitral provision's choice of law clause, requiring Norwegian law as the substantive law of the arbitration, deprives Plaintiff of any meaningful relief.

As set forth below, Norwegian law does not apply to foreign cruise line workers, such as the Plaintiffs. Norway's Seamen's laws only apply to Norwegian residents and citizens; Plaintiffs are neither. Further, Norwegian law does not recognize the causes of action and remedies under the Seaman's Wage Act, 46 U.S.C. §10313 and 18 U.S.C. §1595.

As such, the district court's ruling conflicts with recent United States Supreme Court precedent under *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985) and *American Express Co. v. Italian Colors Restaurant*, __ U.S. ___ (2013), 133 S.Ct. 2304 (2013). These cases hold that arbitration agreements that

include foreign choice-of-law clauses are void as against public policy when they prospectively waive a litigant's right to pursue U.S. statutory remedies. Here, because Royal Caribbean's arbitration clause requires the application of Norwegian law at arbitration, it is unenforceable under *Mitsubishi Motors* and *American Express.*

Moreover, because it is undisputed that Norway's Seaman's laws only apply to Norwegian citizens and residents (Plaintiffs are neither); RCCL's arbitration provision deprives Plaintiff of any meaningful relief, and is therefore unenforceable pursuant to *Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th Cir. 1998).

**Third,** the district court's reliance on *Lindo v. NCL*, 652 F.3d 1257 (11th Cir. 2011) is misplaced. The panel opinion in *Lindo* is in violation of the prior panel precedent rule. The *Lindo* holding is in direct conflict with prior panel precedent established in *Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th Cir. 1998). *Lindo* did not mention or address the holding in *Paladino*.

Moreover, *Lindo* is also in direct conflict with prior panel precedent established in *Thomas v. Carnival*, 573 F. 3d 1113 (11th Cir. 2009).[11] While *Lindo* does discuss *Thomas* at length, it purports to overrule it. As a matter of law,

---

[11] *Thomas*, quoting the Supreme Court's *Mitsubishi Motors* decision, held that a cruise line arbitration provision requiring foreign law at arbitration, was void as against the public policy of the United States, because it forced a seafarer to waive his American statutory rights.

subsequent appellate panel cannot overturn the decision of a prior panel. Rather, only the Eleventh Circuit sitting *en banc* or the United States Supreme Court can overturn the opinion of a prior circuit court panel. Here, *Thomas* has not been overturned by either the Eleventh Circuit sitting *en banc* or the United States Supreme Court. *Thomas* is therefore still binding. *See United States v. Archer,* 531 F. 3d 1347 (11th Cir. 2008) ("[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or this Court *en banc*.") Thus, the *Lindo* panel disregarded *Thomas* in violation of the prior panel precedent rule.  *See Pavon v. Carnival Corporation,* 11-cv-23148 (Lenard, J.) ("The Court further notes that as a panel opinion, *Lindo* cannot overrule *Thomas* as the law of this Circuit; that may only be done by the Eleventh Circuit *en banc*").

    For this reason, this Court must follow the panel decision in *Thomas*, not *Lindo*. *See United States v. Ohayon*, 483 F. 3d 1281, 1289 (11th Cir. 2007) ("When a decision of this Court conflicts with an earlier decision that has not been overturned *en banc*, we are bound by the earlier decision); *United States v. Hornaday,* 392 F. 3d 1306, 1316 (11th Cir. 2004) ("Where there is a conflict between a prior panel decision and those that came before it, we must follow the earlier ones").

    **Fourth,** contrary to the lower Court's ruling below, *Lindo v. NCL*, 652 F. 3d 1257 (11th Cir. 2011) is an advisory opinion not binding on this Court. Before the

13

Eleventh Circuit issued its mandate in *Lindo*, the parties in *Lindo* settled and moved to voluntarily dismiss the appeal. Controlling precedent holds that when a case settles before the end of the appellate process, any opinion that has been produced should be vacated. Advisory opinions are unconstitutional because they do not comply with the "case and controversy" requirement of Article III. Therefore, because *Lindo* is an advisory opinion it should be vacated.

## STANDARD OF REVIEW

The Eleventh Circuit Court of Appeals reviews de novo a district court's order to compel arbitration. *Thomas v. Carnival*, 573 F. 3d 1113 (11th Cir. 2009), citing *Bautista v. Star Cruises,* 396 F. 3d 1289, 1294 (11th Cir. 2005).

## ARGUMENT

I.    **PLAINTIFFS ARE SEAFARERS. SEAFARERS ARE WARDS OF THE ADMIRALTY COURTS AND A HISTORICALLY PROTECTED CLASS BY CONGRESS.**

Plaintiffs worked aboard cruise ships owned and operated by Defendant, RCCL, a company based in Miami, Florida. Because they worked full time aboard ships operated by an American based cruise line, Plaintiffs is considered a "seamen."

Since the foundation of the Republic, "[t]he policy of Congress, as evidenced by its legislation, has been to deal with [seamen] as a favored class." *Bainbridge v. Merchants' & Miners' Transp. Co.,* 287 U.S. 278 (1932).[12] Further, as the Fifth

---

[12]    Congress first enacted laws to protect the wages of seafaring employees in 1790. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 64, 572-73 (1982).

Circuit explained in *Castillo v. Spiliada Maritime Corp.*, 937 F.2d 240, 243 (5th Cir. 1991), "[h]istorically, seamen have enjoyed a special status in our judicial system. They enjoy this status because they occupy a unique position. A seaman isolated on a ship on the high seas is often vulnerable to the exploitation of his employer. Moreover, there exists great inequality in bargaining position between large ship-owners and unsophisticated seamen." *Id.* at 243.

Thus, "[t]o shield seamen against unfair conduct by ship-owners, Congress enacted special protection statutes. Congress did not limit this statutory coverage to American seamen; rather, Congress extended protection to seamen who serve on a foreign vessel when located in a United States harbor. 46 U.S.C. §10313." *Castillo,* 937 F. 2d at 243; *see also Su v. MV Southern Aster*, 978 F. 2d 462 (9th Cir. 1992) ("The Wage Act's jurisdictional provision makes clear that foreign seafarers discharged in an American port may invoke the Act's protections.").

Like Congress, from the beginning, federal courts have remained guardians of seamen. *See U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355 (1971) ("Seamen from the Start were wards of admiralty. The federal courts remained as the guardians of seamen, the agencies chosen by Congress, to enforce their rights-a-guardian concept which, so far as wage claims are concerned, is not so much different than what it was in the 18th century"); *see also Castillo*, 937 F. 2d at 243 (5th Cir. 1991):

15

We are convinced that federal courts must remain vigilant in protecting the rights of seamen, whether foreign or domestic, in their relations with their employer. This protection comports with our nation's long history of concern and solicitude for seamen with employment disputes.

Thus, in making its determination, this Honorable Court should be mindful of the special status of seamen in our judicial system.

**II.    AN AMERICAN CRUISE LINE WHICH SUBJECTS ITS SEAFARERS TO WORKING CONDITIONS RESEMBLING SLAVERY SHOULD NOT BE ALLOWED TO ADJUDICATE ITS DISPUTES IN ARBITRATION: 1) IN THE ABSENCE OF WRITTEN AND SIGNED ARBITRATION AGREEMENTS AND 2) WHERE THE SUBSTANTIVE LAW OF THE ARBITRATION (NORWEGIAN LAW) DEPRIVES THE SEAFARERS OF ALL REMEDIES.**

**A.    As a preliminary matter, pursuant to binding Supreme Court precedent under *Granite Rock Co., v. International Broth. of Teamsters*, 130 S. Ct. 2847 (2010), there is _no_ "federal policy in favor of arbitration" if the formation of the parties arbitration agreement, its enforceability or application, is at issue.**

As a preliminary matter it is critical to briefly point to recent Supreme Court precedent dispelling the notion that there is always a federal policy in favor of arbitration. In *Granite Rock Co., v. International Broth. of Teamsters*, 130 S. Ct. 2847 (2010), a unanimous United States Supreme Court held that the federal policy favoring arbitration is not applicable if the formation of the parties' arbitration agreement, its enforceability or application is at issue. The rationale for the holding in *Granite Rock*, is "the first principle that underscores all of [the Supreme Court's] arbitration decisions: Arbitration is a 'matter of consent,' and thus is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to

16

arbitration." *Granite Rock,* at 2857; *see also AT&T Technologies, Inc. v. Communications Workers of American*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

**B.     The existence of a valid arbitration provision is at issue in this case. In support of its motion to compel arbitration, Defendant RCCL failed to produce copies of signed written arbitration agreements as to six of the Plaintiffs. As a result, RCCL failed to satisfy the agreement-in-writing prerequisite under the Convention.  Pursuant to binding Eleventh Circuit precedent, therefore, the district court did not have subject matter jurisdiction to compel this matter to arbitration.**

In support of its motion to compel arbitration, RCCL failed to produce copies of the arbitration agreements signed by Plaintiffs Kenneth Downer, Richard Graham Young, Roan Drumond Scott, Auzzie Duane Dabrell, and Stanley Armando Mullings. [13] Below, Royal Caribbean did not dispute that it failed to file written arbitration agreements signed by the Plaintiffs. The reason that Royal Caribbean did not dispute this is simple: no such documents exist. If Royal Caribbean had such

---

[13]     In support of its Motion to Compel Arbitration RCCL produced signed arbitration agreements for *only* two of the Plaintiffs: Lloyd Fitzroy Johnson, Gregory Hughes. However, even for these two Plaintiffs, RCCL did not provide arbitration agreements applicable during the entire claim period in the case (May 27, 2008 to the present). In fact, regarding Lloyd Fitzroy Johnson, RCCL produced one signed arbitration agreement applicable for the period of 10/03/09 – 05/01/10. [D.E. 11-2, pg. 2-4]. **Therefore, RCCL failed to produce valid agreements in writing to arbitrate between Plaintiff Johnson and RCCL for 1) the period of May 27, 2008 - October 2, 2009, and 2) the period of May 2, 2010 to the present.** Similarly, regarding Gregory Hughes, RCCL produced two signed arbitration agreements. The first is only applicable for the period of 10/28/08 – 04/28/09. [R.E. Tab 3, D.E. 11-2, pg. 5-7]. The second is only applicable for the period of 6/10/2009 – 01/02/10. [R.E. Tab 3, D.E. 11-2, pg. 8-10]. **Therefore, RCCL failed to produce valid agreements in writing to arbitrate between Plaintiff Hughes and RCCL for 1) the period of May 27, 2008 - October 27, 2008, and 2) the period of June 3, 2010 to the present.**

documents in its possession it would have produce them. On this ground alone, the district court should have denied Royal Caribbean's motion to compel arbitration.

Article 2 of the Federal Arbitration Act ("FAA") provides for enforcement of foreign arbitration agreements and awards, and to these ends, it ratifies and incorporates the Convention on the Recognition and Enforcement of Foreign Arbitral Awards,  9 U.S.C. §§201-208 (the "Convention Act").  Under the FAA, federal district courts have original jurisdiction over actions "falling under the Convention." 9 U.S.C. §203. The FAA provides two causes of action in federal district court for enforcing arbitration agreements falling under the Convention: an action to compel arbitration pursuant to an arbitration agreement falling under the Convention, and an action to confirm an arbitration award made pursuant to an agreement falling under the Convention.

To determine whether the district court has subject matter jurisdiction over the action to compel arbitration, courts look to language of the Convention. *Sphere Drake Ins. PLC v. Marine Towing, Inc.* 16 F. 3d 666, 669 (5th Cir. 1994). Article II of the Convention is very clear. It imposes a jurisdictional prerequisite on a party asking the court to compel arbitration: **it requires that the party bring the court the written agreement**. Convention, *supra*, art II, 9 U.S.C. §201 (historical and statutory notes) (emphasis added).

Notably, there are no exceptions to this requirement. The reason is simple: Article II is a jurisdictional prerequisite to compel a case to arbitration. *See Czarina*, at 1291("Where a party has failed to satisfy the agreement-in-writing prerequisite, courts have dismissed the action for lack of jurisdiction."). Thus, without signed written arbitration agreements, the district court does not have subject matter jurisdiction to compel the case to arbitration.

**i.    Because Royal Caribbean failed to comply with the agreement-in-writing prerequisite under Article II of the Convention, the district court did not have subject matter jurisdiction to compel this case to arbitration.**

In this case, the district court invoked the Convention in order to compel this matter to arbitration. In doing so, however, the district court ignored the prerequisites of Article II: it compelled arbitration without copies of the written agreement signed by the plaintiffs. The district court's order also conflicts with the plain requirements of the Convention and with binding Eleventh Circuit precedent.

The law in this Circuit is very clear. In *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F. 3d 1286, 1291 (11th Cir. 2004), this Honorable Court held that "Article II of the Convention imposes a prerequisite on a party asking the court to compel arbitration: it requires that the party bring the court the written agreement." *See Czarina*, at 1291:

> To determine whether an award falls under the Convention, and thus, whether the district court has jurisdiction over the action to compel arbitration or to confirm an award, courts look to the language of the Convention. (Citations omitted). **Article II of the Convention imposes a**

> **pre-requisite on a party asking the court to compel arbitration: it requires that the party bring the court the written agreement.** Convention, *supra*, art. II, 9 U.S.C. 201 (historical and statutory notes). … Both articles II and IV explicitly refer to article II's definition of an arbitration agreement in writing. That definition reads: "[t]he term 'agreement in writing' **shall** include an arbitral clause in a contract or arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." *Id.,* at art. II, see 2.

Id. (emphasis added). Thus, pursuant to binding Eleventh Circuit precedent, the jurisdictional prerequisite of presenting copies of the arbitration agreements in a motion to compel arbitration is **<u>mandatory</u>**. *See Czarina*, at 1291("**Where a party has failed to satisfy the agreement-in-writing prerequisite, courts have dismissed the action for lack of jurisdiction**.") (emphasis added).

Therefore, under the plain language of the Convention and this Court's precedent in *Czarina*, because Royal Caribbean failed to satisfy the agreement-in-writing prerequisite, the district court did not have subject matter jurisdiction to compel this matter to arbitration.

It is worth that this Honorable Court is bound by the Eleventh Circuit's decision in *Czarina*. *See United States v. Smith,* 122 F. 3d 1344, 1359 (11th Cir. 1997) ("Under the prior panel precedent rule, we are bound by earlier panel holdings … unless and until they are overruled *en banc* or by the Supreme Court").

Indeed, the holding in *Czarina*, at 1291, has been reaffirmed by this Honorable Court in every major arbitration decision since. *See, i.e. Bautista v. Star Cruises*, 396 F.3d 1289, 1295 n. 7 (11th Cir. 2005) ("The jurisdictional requirements of the

convention are that: (1) there is an agreement in writing within the meaning of the convention"); *Lindo v. NCL*, 652 F. 3d 1257, 1272 n. 10 (11th Cir. 2011) ("The jurisdictional prerequisites **mandate** that (1) there is an agreement in writing within the meaning of the Convention") (emphasis added).[14]

The signed and written agreement pre-requisite has also been applied by other Courts across the United States. *See Khan Lucas Lancaster, Inc., v. Lark Int'l Ltd.,* 186 F. 3d 2010, 215 (2d Cir. 1999) (**reversing order compelling arbitration under the Convention**, and dismissing the motion to compel arbitration with prejudice, for lack of subject matter jurisdiction, where the written purchase orders containing the arbitration clause had not been signed by both parties); *Lo v. Aetna Int'l, Inc.,* 2000 WL 565465, *4 (D. Conn. March 29, 2000) ("Since Aetna has not shown no written agreement to arbitrate these claims signed by Ms. Lo in her capacity as beneficiary, the Court concludes that it lacks subject matter jurisdiction under the New York Convention"); *Capello v. Carnival Corporation,* Case No. 12-22181-civ-Altonaga/Simonton [D.E. 15] (S.D. Fla. Aug. 8, 2012) (Denying cruise lines' motion to compel Arbitration under the Convention for failing to present a signed arbitration agreement between the parties); *Castel v. Clear Channel Broadcasting, Inc.,* 254 F. Supp. 2d 1081 (W.D. Ks. 2003), *citing Lyster v. Ryan's Family Steak Houses, Inc.,*

---

[14] In both *Bautista* and *Lindo*, this Honorable Court held that the first pre-requisite of the Convention was met because Defendants filed signed copies of the written arbitration agreements.

239 F. 3d 943, 945 (8th Cir. 2001) ("In the Eight Circuit, arbitration is required **if a valid agreement exists** and the dispute falls within the scope of the agreement ... a party who has not agreed to arbitrate a dispute cannot be forced to do so.") [15]

In sum, because Royal Caribbean failed to comply with the agreement-in-writing perquisite under Article II of the Convention, the district court did not have subject matter jurisdiction to compel this case to arbitration.

ii.   **Royal Caribbean cannot circumvent the jurisdictional prerequisites of the Convention. The agreement-in-writing requirement is mandatory.**

Despite the unequivocal language of Article II and the weight of the precedent listed above, the district court held that it was unnecessary for Royal Caribbean to comply with the agreement-in-writing requirement.

In support of this assertion, the Court held that the "Plaintiffs admit[ed] in their Complaint that they each entered into written Employment Agreements, which incorporate the CBA and contain mandatory arbitration provisions." ECF No. 40, pg. 2. Under the district court's rationale, the Seafarer's alleged admissions in the

---

[15] The commentators also agree that presenting a signed arbitration agreement at the Motion to Compel stage is mandatory. **Without a signed agreement in writing the Court has no jurisdiction to compel arbitration.** *See* Thomas H. Oehmke, *Arbitration Contract – No written or valid agreement,* 2 Commercial Arbitration § 41:54 (2012) ("The Convention's criteria for such an agreement - namely, a signed arbitration agreement or an exchange of letters or telegrams - **were mandatory and exhaustive**. Clearly, the first inquiry in a case governed by the New York Convention is whether the parties have made any agreement in writing to arbitrate the subject in dispute; **where no such agreement exists, the court has no jurisdiction under the Convention or its implementing legislation to stay a federal action or to compel arbitration**") (emphasis added).

Complaint established the first element of the Convention and obviated the need for Royal Caribbean to offer any proof on the issue.

**First**, regardless of the allegations in the Complaint, Article II of the Convention and this Honorable Court's holdings in *Czarina* and *Bautista*, make it clear that production of the signed arbitration agreement is a pre-requisite for the Court to have the power (i.e. jurisdiction) to compel the case to arbitration under the Convention. Nothing in *Czarina* or Article II provides that the "agreement in writing" requirement, is satisfied through allegations in the Complaint. Instead, this Honorable Court has defined "agreement in writing" as "an arbitral clause in a contract or arbitration agreement, signed by the parties." *Czarina,* at 1291 (11th Cir. 2004).

Thus, regardless of the allegations in the Complaint, without copies of the signed arbitration agreements, the district court did not have jurisdiction to compel the case to arbitration.[16] *See, i.e. Love v. Turlington*, 733 F. 2d 1562 (11th Cir. 1984)

---

[16] It worth noting that at the award enforcement stage, Article IV of the Convention also requires that the party seeking to enforce the award present the written and signed arbitration agreements. Without the agreements in writing the Court will be without power to confirm or vacate an award, thereby depriving the Seafarers of an opportunity to review the arbitrator's ruling at the award enforcement stage. *See Czarina,* 358 F. 3d 1286, 1292 (11th Cir. 2004):

> … the Convention uses mandatory language in establishing the pre-requisites: "[t]o obtain recognition and enforcement … the party applying for recognition and enforcement *shall, at the time of the application, supply* a copy of the award and **the arbitration agreement**. This **mandatory language** also indicates that without these requirements being satisfied, **the Court is without power** to confirm an award…

("It is an established principle of law that subject matter jurisdiction cannot be created or waived by agreement of the parties").

Here, in an attempt to impermissibly create subject matter jurisdiction for itself, the district court fabricated an exception that is not recognized by the Convention nor any binding cases interpreting it.[17] *See Rittenhouse v. Eisen,* 404 F. 3d 395, 397 (6th Cir. 2005) ("[T]he judiciary's job is to enforce the law Congress enacted, not to write a different one that judges think superior."); *U.S. v. LKAV*, 712 F. 3d 436 (9th Cir. 2013) ("[A] decision to rearrange or rewrite a statute falls within the legislative, not the judicial, prerogative.").

**Second**, Seafarers Downer, Young, Scott, Dabrell, Fitz Patrick, and Mullings did not make any admissions in the Complaint. Put simply, the seafarers cannot admit to the existence of an agreement that does not exist.

The district court's reliance on Count I of the Plaintiffs' complaint was misplaced. ECF No. 1. Count I is declaratory action which seeks to invalidate Royal Caribbean's arbitration clauses as against public policy, pursuant to Article V(2)(B) of the Convention.

---

*Id.* (emphasis added).

[17] In the order, ECF No. 40, the district court cites to *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.,* 713 F. 2d 618, 621 (11th Cir. 1983) and *Cooper Meredian Yatchs, Ltd.,* 575 F. 3d 1151 (11th Cir. 2009). These cases are inapposite. Neither *Best Canvas* nor *Meridian Yachts,* involved arbitration, the Convention or its jurisdictional pre-requisites. Moreover, nothing in *Best Canvas* or *Meridian Yatchs*, says that the allegations in a Complaint are an exception to the Convention's jurisdictional prerequisite of presenting signed arbitration agreements. These cases are therefore inapplicable.

**Count I is only applicable to the Seafarers that actually signed arbitration agreements.** The purpose of Count I was to plead in the alternative (and raise an affirmative defense under Article V(2)(B) of the Convention), in the event that Royal Caribbean was able to meet all the jurisdictional pre-requisites – including the first pre-requisite (producing copies of arbitration agreements signed by each seafarer). *See Brenner v. Miller,* 2009 WL 1393420 (S.D. Fla. 2009) (Huck, J.) (".. The Plaintiff is permitted to plead alternative theories of recovery. [Under] *Fed. R. Civ. P. 8(d)(2)* a party may set forth two or more statements of a claim or **defense** alternatively or hypothetically, either in one count or defense or in separate counts or defenses").

Thus, Count I consists of only statements of defense *in the alternative*, with respect to those Plaintiffs for which Royal Caribbean produced signed arbitration agreements. Therefore, the allegations in Count I should not be construed as an admission by Seafarers Downer, Young, Scott, Dabrell, Fitz Patrick, and Mullings. *See Molsbergen v. U.S.,* 757 F. 2d 1016 (9th Cir. 1985) ("In light of the liberal pleading policy embodied in Rule 8(e)(2), we hold that a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case").

**Third,** the only admission in Count I – if any – is that Royal Caribbean drafts contracts with arbitration provisions. This, however, does not conclusively establish

25

that the Seafarers here (Downer, Young, Scott, Dabrell, Fitz Patrick and Mullings)

*in fact* signed such arbitration agreements. *See Hooters of America, Inc., v. Hooters*

*of Lakeland, LLC.,* 2006 WL 1793541 (M.D. Fla. 2006):

> Section 4 of the FAA grants district courts the authority to compel arbitration "upon being satisfied that the making of the agreement or the failure to comply therewith is not an issue." 9 U.S.C. §4. **Defendants have not presented the alleged Arbitration Agreement, and, instead, ask the Court to make factual inferences to establish the existence of this agreement.** Defendants contend that all employees were required to complete an employment application and New Hire Packet containing the Arbitration Agreement and, therefore, the Plaintiff must also have executed this Arbitration Agreement or her employment would not have commenced. **Under Defendant's reasoning, if Plaintiff began working, then she must have executed an Arbitration Agreement.** <u>**This Court will not rely on "if, then" scenarios and reverse factual inferences to establish the existence of a contract. At the present time, Defendants have failed to conclusively establish that the Plaintiff executed written Arbitration Agreement that falls within the scope of the FAA**</u>**. This Court is not satisfied that the making of the Agreement is not at issue, and, therefore, cannot stay action and compel arbitration.**
>
> <u>**Defendants have the burden of producing the Arbitration Agreement and establishing the contractual relationship necessary to implicate the FAA**</u> and its provisions granting this Court authority to dismiss or stay Plaintiff's cause of action and to Compel arbitration. **This Court concludes that at the present time, Defendants have not carried that burden.**

*Id.*, at 2. (Emphasis added).

### iii.    The filing of affidavits or generic contracts also does not satisfy the agreement-in-writing requirement under the Convention.

Instead of producing signed arbitration agreements as it was required to, in

order to circumvent Article II's jurisdictional prerequisite, RCCL filed the

declaration of Salvatore A. Faso II, who holds the position of Director, Guest and Employee Legal Services for Royal Caribbean Cruises, Ltd. ("RCCL"). In the affidavit, Mr. Faso declared that "Stateroom attendants working aboard RCL's cruise ships sign sign-on employment agreements ("SOEA") at the beginning of each contract period."

Mr. Faso's affidavit, in and of itself, however, was not enough to show the existence of a valid arbitration agreement in writing between the Plaintiffs and RCCL. *See Allen v. Champion Enterprises*, 250 Fed. Appx. 266 (11th Cir. 2007):

> The Allens filed a motion to compel arbitration. In support of their motion, the Allens did not file any affidavits or a signed arbitration agreement. The only evidence of an arbitration agreement they submitted was a photocopied arbitration clause that was marked as exhibit one. In response to the Allens' motion, each of the defendants filed a motion to strike the naked arbitration clause from the evidence, arguing that it was not signed, not identified, as being part of the parties' purchase contract, and not supported by an affidavit.
>
> In response to the defendants' motion to strike the arbitration clause, Margaret Allen submitted an affidavit stating that the arbitration clause was in fact an accurate copy of an arbitration provision …. On October 30, 2006, the district court granted the defendants' motions to strike Margaret Allen's affidavits and denied the Allens motion to compel arbitration … **The district court then found that the Allens had not established that the parties entered into a valid arbitration agreement** … On appeal the Allens contend that the district court incorrectly found (1) that there was no valid agreement to arbitrate this case. **The problem for the Allens is that the only evidence of an arbitration agreement was the photocopied arbitration clause and Margaret Allen's affidavit, which were all excluded by the district court** … [T]he evidence lacks a written arbitration agreement. **For what is worth, even if Margaret Allen's affidavits had not been struck, we would reach the same result on this appeal. Even with the affidavits** the Allens did

27

> not establish that their Motion to Compel arbitration should have been
> granted. We therefore affirm the district court's order denying the Allen's
> motion to compel arbitration […].

Id., at 2. (emphasis added).

In sum, as set forth by the Eleventh Circuit in *Allen*, Mr. Faso's affidavit in

and of itself, was not enough to show the existence of a valid arbitration agreement

in writing.

All in all, since RCCL failed to conclusively establish that these six Plaintiffs

executed arbitration agreements during the relevant claim period,[18] RCCL failed to

meet the first pre-requisite of the Convention. On this ground alone, RCCL's Motion

to Compel Arbitration should have been denied in its entirety.

**C.      The arbitral provision's choice of law clause, requiring Norwegian law
        as the substantive law of the arbitration, deprives Plaintiff of any
        meaningful relief and is therefore unenforceable pursuant to *Paladino v.
        Avnet Computer Technologies, Inc.*, 134 F. 3d 1054 (11th Cir. 1998).**

Even if RCCL had produced signed arbitration agreements by all of the

Seafarers; the arbitral provision would be nonetheless unenforceable.

The subject arbitration provision contains a choice of law clause which

provides, in part, at paragraph 3 of the employment contract that "[t]he procedural

and substantive law of the arbitration shall be the **law of Norway** without regard to

_____

[18] Similarly, as set forth in footnote 9, RCCL failed to prove the existence of valid agreements in
writing to arbitrate between Plaintiff Johnson and RCCL for 1) the period of May 27, 2008 -
October 2, 2009, and 2) the period of May 2, 2010 to the present. RCCL also failed to prove the
existence of valid agreements in writing to arbitrate between Plaintiff Hughes and RCCL for 1)
the period of May 27, 2008 - October 27, 2008, and 2) the period of June 3, 2010 to the present.

conflict of law principles" [R.E. Tab 3, D.E. 11-3, pg. 3].  Further, at paragraph E,

titled "governing law" the contract provides, that "[a]ny grievance or dispute shall

be governed in accordance with the **laws of Norway**, without regard to any conflicts

of law principles." *Id.*

Pursuant to the terms of RCCL's arbitral provision, therefore, if Plaintiffs

were compelled to arbitrate this matter, Plaintiffs would be forced to arbitrate their

claims exclusively under Norwegian law.

Under Eleventh Circuit precedent, an arbitration clause is not enforceable when

an arbitration clause ***does not*** permit relief equivalent to statutory remedies, or when

the arbitration clause has provisions that defeat the remedial purpose of the federal

statute. *See Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th

Cir. 1998):

> Federal statutory claims are generally arbitrable because arbitration, like
> litigation, can serve a remedial and deterrent function, and federal law
> favors arbitration… **But the arbitrability of such claims rests on the**
> **assumption that the arbitration clause permits relief equivalent to**
> **court remedies.** *See Glimer,* 500 U.S. at 28. <u>**When an arbitration**</u>
> <u>**clause has provisions that defeat the remedial purpose of the statute,**</u>
> <u>**therefore, the arbitration clause is not enforceable**</u>.
>
> **This clause defeats the statute's remedial purposes because it**
> **insulates Avnet from Title VII damages and equitable relief**. *Cf.*
> *Brisentine v. Stone & Webster Eng'g Corp.,* 117 F. 3d 519, 526-27 (11th
> Cir. 1997) … Arguably, Paladino could hope for a finding of liability
> from the arbitrator. In that event, she would still have to repair to a
> judicial forum to pursue any Title VII remedy. <u>**These difficulties**</u>
> <u>**considered, we treat this clause as an impermissible waiver of Title**</u>
> <u>**VII rights**</u>. *See Alexander Gardner-Denver Co.,* 415 U.S. 36, 51-52

(1974); *Schwartz v. Florida Bd. of Regents*, 807 F. 2d 901, 906 (11th Cir. 1987).

... **A clause such as this one that deprives an employee of any hope of meaningful relief**, while imposing high costs on the employee, undermines the policies that support Title VII. **It is not enforceable**.

*Id.,* (emphasis added).[19]

This case involves seafarers' claims against Defendant RCCL for Forced Labor and Peonage under 18 U.S.C. §1595 and the Seaman's Wage Act, 46 U.S.C. §10313.

Here, RCCL's arbitral provision requires that *Norwegian law* govern Plaintiff's substantive claims at arbitration. As succinctly shown below, however, a review of relevant Norwegian law indicates that if Plaintiffs were required to arbitrate under the laws of that country he would be completely deprived of his causes of action and remedies.

Thus, because RCCL's arbitration clause deprives Plaintiffs of any hope of meaningful relief – defeating the remedial purposes of the Seaman's Wage Act and the Labor and Peonage Statutes– the arbitral provision is unenforceable pursuant to *Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th Cir. 1998).

---

[19] *See Anders v. Hometown Mortgage Services, Inc.,* 346 F. 3d 1024 (11th Cir. 2003) (holding that *Paladino* is the law in the Eleventh Circuit, stating "[t]hat decision [*Paladino*] is the law of this Circuit … [*Ft. 6*] The opinions in ***Paladino*** are presented in a confusing way. Chief Judge Hatchett's opinion is presented first, but no other member of the panel joined it, 134 F. 3d at 1055. The opinion of the Court is that of Judge Cox, joined as it was by Judge Tjoflat, *id.* at 1060; *cf. McMahan v. Toto,* 311 F. 3d 1077, 1080 (11th Cir. 2002) ("Two is a majority of three, and a majority of participating judges controls a court's decision.")).

> **i.    Norwegian law does not recognize Plaintiffs' U.S. statutory rights pursuant to the Seaman's Wage Act, (46 U.S.C. §10313, 46 U.S.C. §10504). Additionally, Norwegian law does not offer comparable remedies to the U.S. Seaman's Wage Act.**

In support of its Motion to Compel Arbitration, RCCL made the assertion that "Norwegian law provides a complete remedy for Unpaid Wages." In support of that assertion, RCCL attached the affidavit of Eli Aasheim, a Norwegian attorney. In the affidavit, Mr. Aasheim declared, under penalty of perjury that "Norwegian law recognizes employees' claims, including seafarers' claims, against employees for unpaid wages." Mr. Aasheim also cited to the Norwegian Seamen's Act of 30 May 1975 No. 18 ("The Norwegian Seaman's Act").

*First,* contrary to Mr. Asheeim and RCCL's assertions, **a closer look at Norwegian law reveals that Plaintiffs do not have remedies for unpaid wages under Norwegian law.**

Pursuant to Rule 44.1,[20] the Plaintiffs conducted a thorough review of relevant Norwegian legislation. In doing so, the Plaintiffs consulted the University of Oslo

---

[20] Pursuant to Federal Rule of Civil Procedure 44.1, in determining foreign law, this Honorable Court may consider ***any*** relevant material or source. *Ferrostaal, Inc. v. M/V Sea Phoenix,* 447 F. 3d 212, 216 (3d Cir. 2006); *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries,* 353 F. 3d 916, 924 n. 11 (11th Cir. 2003). The Court may consider any relevant material or source to determine foreign law, regardless of whether it is admissible. *Melea, Ltd. v. Jawer SA,* 511 F. 3d 1060, 1071 (10th Cir. 2007).

31

Law Library.[21] The University of Oslo Library offers to the public a comprehensive collection of Norwegian legislation translated to the English language.[22] In total, Plaintiffs reviewed 367 Parliamentary acts. None of these Norwegian parliamentary acts, however, recognized the same rights and causes of action afforded to seafarers by the Seaman's Wage Act.[23]

Out of the 367 Acts, only one act, Norway's "Seamen's Act of 30 May 1975 no. 18," ("Norway Seamen's Act"), concerns the rights of seafarers working aboard ships. **However, because the Plaintiffs in this matter are neither residents nor citizens of Norway, the provisions of the Norway Seamen's Act <u>exclude them</u>.** [R.E. Tab 6].

In fact, Norway's Seamen's Act, attached as R.E. Tab 6, specifically **<u>excludes</u>** application of the act to: 1) cruise ship workers, 2) who are neither residents nor citizens of Norway, 3) working for a foreign (non-Norwegian) employer. *See* §1 "Scope of Act," Norway Seamen's Act of 30 May 1975 No. 18, attached hereto as R.E. Tab 6:

---

[21]    The law Library of the University of Oslo is one of the largest law libraries in Northern Europe. All visitors are welcome to use the library collections. *See:* http://www.ub.uio.no/english/about/organisation/ujur/

[22]    The collection consists mostly of translations by Norwegian Government Agencies, Royal Ministries and Private Institutions.

[23]    For a list of Norway's 367 parliamentary acts, *see* www.ub.uio.no/cgi-bin/ujur/ulov/sok.cgi?type=LOV. The list includes each act in chronological order. Under the name of each act, there is a web link to access a copy each Act in English.

§1  *The scope of the Act*

This Act applies to any person who is employed on board a **Norwegian ship**, and who does not only work on board while the ship is in port.
**Persons who are neither residents in Norway nor Norwegian nationals and who are hired by a foreign employer to serve passengers on board a cruise ship, are _only_ subject to provisions in §4, §18, subsection 1, first and second  paragraph, however, with the exception of the right to be transferred under the second paragraph, §18 subsection 3 as well as §27, Chapter II A and Chapter II A and Chapter II B, §§39, 43, 45 and 49**. Nationals of countries to which the EEA Agreement applies shall be considered equal to Norwegian Nationals.

Id., (emphasis added). *First*, Plaintiffs are neither citizens nor residents of Norway. In fact, as RCCL admitted [R.E. Tab 3, D.E. 11, pg. 11], Plaintiffs are citizens and residents of Jamaica, Costa Rica, and St. Vincent and the Grenadines. *Second*, Plaintiffs worked aboard a cruise ship for a non-Norwegian (foreign) employer,[24] on Bahamian flagged vessels. *Third*, the wage sections of Norway's Seaman's Act are §§21, 22, 23, 24, and 25 (neither of which are listed as exceptions in §1 above). Moreover, none of the listed exceptions in §1 above (§§4, 18, 27, 39, 43, 45 and 49)[25] recognize a seaman's right to sue for an employer's deprivation of wages or to

---

[24]    Royal Caribbean is a Liberian Corporation.

[25]    Section 4 deals with "minimum working age"; section 18 deals with a seafarer's rights and duties upon loss of a ship, in connection with maritime accident;" section 27 deals with the "care of sick or injured seafarers;" section 39 deals with a seafarer's "duty to comply with orders;" section 43 deals with a seafarer's right to hold religious services aboard the vessel; section 45 deals the personal effects that a seafarer is allowed to carry on board the vessel; and section 49 deals with the masters duties if felonies are committed while the vessel is abroad.

prevent forced labor. *Fourth*, Plaintiffs are not nationals of a country to which the EEA Agreement applies.[26]

Therefore, as set forth in of §1 the Norway Seaman's Act, Plaintiffs do not have remedies for unpaid wages under Norwegian law.

Moreover, these Norwegian provisions[27] do not allow seafarers to sue their employer for penalty wages, an unmistakable and unique statutory right under the U.S. Seaman's Wage Act, 46 U.S.C. §10313.[28]

Finally, as shown in [R.E. Tab 6] (Norway Seaman's Act of 30 May 1975 No. 18), Norwegian law also does not recognize a seafarer's right to bring civil claims against a perpetrator (or whoever knowingly financially benefits from) forced labor and/or peonage. This right is unique to United States statutory law. 18 U.S.C. §1595.

All in all, if the Plaintiffs are required to arbitrate, they would be forced to do so under laws which specifically exempt "cruise line workers" and "non-Norwegian

---

[26]     The EEA agreement applies only to citizens of European Union nations, citizens of Sweden, Norway, Iceland and Liechtenstein. Plaintiffs are not European Union nationals, and are not citizens of Sweden, Norway Iceland or Liechtenstein.

[27]     *See* R.E.6, §§21, 22, 23, 24, and 25.

[28]     The U.S. Seaman's Wage Act penalty wage provisions, 46 U.S.C. §10313, 46 U.S.C. §10504, provide: (g) (1) Subject to paragraph (2), when payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed. **This "chief tool" is a U.S. statutory right, not recognized by Norwegian law.**

citizens." To put it more bluntly, if the Plaintiffs are required to arbitrate under Norwegian law, they get **nothing**.

Thus, arbitration deprives the Plaintiffs of their Congressional statutory rights to bring claims against their employer for failure to pay wages and for subjecting them to forced labor. Such deprivation of statutory rights is contrary to this country's public policy of treating seafarers as a unique and favored class. *See, e.g. Bainbridge v. Merchants' & Miners' Transp. Co.,* 287 U.S. 278, 282 (1932) ("The policy of Congress, as evidenced by its legislation, has been to deal with [seamen] as a favored class").

Moreover, it creates exactly the situation that the Eleventh Circuit discussed in *Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th Cir. 1998), declaring a similar arbitral agreement an "**impermissible waiver of statutory rights**" because "**[a] clause such as this one deprives an employee of any hope of meaningful relief**." Id., (emphasis added).

Like in *Paladino*, RCCL's arbitration clause, requiring the application of Norwegian law, "does not permit relief equivalent to court remedies" and "deprives the Plaintiffs of any hope of meaningful relief." Further, the arbitration clause's choice-of-law provision "defeats the remedial purpose of the [Seaman's Wage Act]," making it, pursuant to *Paladino*, unenforceable. *See Paladino,* 134 F. 3d 1054 (11th Cir. 1998):

When an arbitration clause has provisions that defeat the remedial purpose of the statute, therefore, the arbitration clause is not enforceable. *Id.*

Finally, there is no assurance of "opportunity for review." When the Plaintiffs bring a claim in arbitration against RCCL, because Norwegian law will apply, the Plaintiffs will no receive no award in the arbitral forum –given the U.S. based nature of their claim. Therefore, the Plaintiffs will have nothing to enforce in U.S. Courts, depriving them of any later opportunity to review. *See Thomas v. Carnival,* 573 F, 3d 1113 (11th Cir. 2009).

**D.  Pursuant to binding United States Supreme Court precedent established in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985), RCCL's arbitration provision is void as against public policy. The foreign choice of law provision and foreign venue selection provision operate in tandem as a prospective waiver of Plaintiff's statutory rights.**

In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985), the Supreme Court ruled that U.S. Courts should enforce agreements resolving antitrust claims through arbitration when those agreements arose from international, commercial transactions. But in a famous footnote, the Supreme Court noted that "in the event the choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, [it] would have little hesitation in condemning the agreement as against public policy." *Id.* at 637 n. 19.

The doctrine, called the "effective vindication" exception, was reaffirmed earlier this year by Supreme Court. *See American Express Co. v. Italian Colors Restaurant*, __ U.S. ___ (2013), 133 S.Ct. 2304 (2013):

> The "effective vindication" exception to which respondents allude originated as dictum in *Mitsubishi Motors,* where **we expressed a willingness to invalidate, on "public policy" grounds, arbitration agreements that "operat[e] ... as a prospective waiver of a party's *right to pursue* statutory remedies."** 473 U.S., at 637, n. 19, 105 S.Ct. 3346 (emphasis added). Dismissing concerns that the arbitral forum was inadequate, we said that "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id.,* at 637, 105 S.Ct. 3346. Subsequent cases have similarly asserted the existence of an "effective vindication" exception, see, *e.g., 14 Penn Plaza LLC v. Pyett,* 556 U.S. 247, 273–274, 129 S.Ct. 1456, 173 L.Ed.2d 398 (2009); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).… **As we have described, the exception finds its origin in the desire to prevent "prospective waiver of a party's *right to pursue* statutory remedies,"** *Mitsubishi Motors, supra,* at 637, n. 19, 105 S.Ct. 3346

Id. (emphasis added).[29]

Here, as set forth above, RCCL seeks to compel arbitration under a contract that calls for arbitration pursuant to the laws of Norway. This contract would undoubtedly deprive Plaintiff of his U.S. legal rights, as none of the claims presented by Plaintiff would be cognizable under Norwegian law (and much less U.S. law). As

---

[29] While in the recent *American Express* case the Supreme Court refused to apply the prospective waiver doctrine to the facts of that case, the holding is very significant in light of its recognition that the "effective vindication exception" from *Mitsubishi Motors* is no longer dicta, but a valid mechanism to hold arbitration agreements void as against public policy

a result, the Supreme Court's rationale in *Mitsubishi Motors* and *American Express* controls.

As the Supreme Court envisioned in *Mitsubishi Motors*, here, RCCL's choice-of-law clause in the arbitration agreement operates as a prospective waiver of Plaintiff's right to pursue statutory remedies. Therefore, binding Supreme Court precedent requires that NCL's agreement be declared "void as against public policy." *See, e.g. Bainbridge v. Merchants' & Miners' Transp. Co.*, 287 U.S. 278, 282 (1932) ("The policy of **Congress**, as evidenced by its legislation, has been to deal with [seamen] as a favored class"); *Castillo v. Spiliada Maritime Corp.*, 937 F. 2d 240, 243 (5th Cir. 1991):

> "[H]istorically, seamen have enjoyed a special status in our judicial system… We are convinced that federal courts must remain vigilant in protecting the rights of seamen, whether foreign or domestic, in their relations with their employer. This protection comports with our nation's long history of concern

i.    **This Honorable Court recognized the Supreme Court's "prospective waiver" doctrine of *Mitsubishi*, in *Thomas v. Carnival*, 573 F. 3d 113 (11th Cir. 2009), and declared an identical provision void as against public policy.**

In *Thomas v. Carnival*, 573 F. 3d 1113 (11th Cir. 2009) the Court succinctly held that arbitration provisions in seafarers contracts - such as the one herein - with foreign choice of law clauses and foreign forum selection clauses are against public policy and thus render the entire arbitration clause null and void. *Thomas* concerned a seaman who was injured aboard two Carnival cruise ships. Like in this matter, the

38

claims asserted were under the U.S. Seaman's Wage Act. Carnival (the shipowner-employer) sought to compel arbitration based upon an arbitration provision in the seaman's employment agreement.

The district court compelled arbitration, but a panel of the Eleventh Circuit reversed. Although it concluded that the seaman's employment agreement was governed by the Convention, *see id.* at 1117, it ruled that the application of the arbitration clause – under which disputes would be arbitrated in the Philippines and resolved under Panamanian law – would be void as against the public policy of the United States because it forced the seaman to essentially waive his American statutory rights (i.e. Seaman's Wage Act) in a forum that must apply non-U.S. law (i.e. Panamanian law). *See Thomas v. Carnival,* 573 F, 3d 1113 (11th Cir. 2009)*, citing Vimar Seguros Y Reaseguros v. M/V Sky Reefer,* 515 U.S. 528 (1995).

Here, the language of the arbitration and choice of law clauses in *Thomas* is similar, if not identical, to the language of the arbitration and choice of law clauses in the employment agreement here. As a result, the rationale in *Thomas* controls and the arbitration and choice of law clauses cannot be enforced to deprive Plaintiffs of their statutory rights. Therefore, under *Thomas* which declared the same arbitral provision in a cruise line contract void as against public policy; this Honorable Court should find the subject RCCL arbitral provision null and void as against public policy.

**E.    The Eleventh Circuit's decision in *Bautista v. Star Cruises,* 396 F. 3d 1289, 1294 (11th Cir. 2005) does not control the outcome of this case. Contrary to the Honorable Court's ruling below, *Thomas* does not conflict with *Bautista. Bautista* predates *Thomas* and did not address the issue of whether a contract that calls for application of only foreign law in arbitration is void as against public policy.**

In the Order Compelling Arbitration [R.E. Tab 4] the Court relied on *Bautista v. Star Cruises,* 396 F. 3d 1289, 1294 (11th Cir. 2005). Defendant's Motion to Compel Arbitration [R.E. Tab 3] also argued that *Bautista* – and not *Thomas* controlled the outcome of this case. However, *Bautista* and *Thomas* concerned fundamentally distinct and unrelated issues. Therefore, *Bautista* is inapposite.

"[A]lthough the Plaintiffs in *Bautista* were subject to a similar arbitration provision as the Plaintiff in this action, ***Bautista* predates *Thomas* and did not address the issue of whether a contract that calls for the application of only foreign law in arbitration is void as against public policy**. In *Thomas*, the Eleventh Circuit specifically addressed the issue and held that when an arbitration provision calls for the application of only foreign law, the provision bars the plaintiff from relying on any U.S. statutorily created cause of action, and thus is unenforceable." *Lagarde v. Carnival Corporation,* 11-20822-UNGARO (S.D. Fla. 2011) (Ungaro, J.) (emphasis added). *See also Alcalde v. Carnival Cruise Lines*, 1:10-cv-24457-Moore/Torres (S.D. Fla. 2010) (Moore, J.):

Importantly, however, the ***Bautista* court never addressed whether precluding claims under U.S. law qualifies as an affirmative defense**

**under the Convention because it is violative of U.S. public policy.**
Therefore, as Alcalde asserts in this defense, this Court will examine it in light of the *Thomas* reasoning.

*Id.,* [D.E. 34, pg. 5] (Emphasis added). *See also Meneses v. Carnival Corp.,* 731 F.

Supp. 2d 1332 (S.D. Fla. 2010)(King, J.):

> Finally, contrary to Defendant's argument, the Eleventh Circuit's decision in *Bautista v. Star Cruises* does not control the outcome of this case. In *Bautista,* although the court compelled arbitration of a Jones Act claim, the argument that was presented in *Thomas*-that the arbitration clause was void because it deprived the plaintiff of a U.S. statutory right- was not presented, and therefore the ***Bautista*** court had no occasion to address it. *See generally Bautista v. Star Cruises,* 396 F. 3d 1289 (11th Cir. 2005). Without such a determination, ***Bautista*** is inapposite to the instant matter. Instead, the more appropriate course of action for this Court is to follow *Thomas,* which directly addressed the issue at hand.

Indeed the issues discussed in *Bautista* are not dispositive here. In *Bautista*, a group of seamen brought claims for negligence under the Jones Act, unseaworthiness, and for failure to provide maintenance, cure, and unearned wages. The main issue in *Bautista* was whether the arbitration clauses in the seamen's employment contracts met the Convention's jurisdictional requirements, including a whether that the so-called "seamen exception" to the Federal Arbitration Act, 9 U.S.C. §1, applied to the Convention. After answering the question in the negative, the panel sent the Bautista seafarers' cases to arbitration ***under U.S. law***. *Bautista* was not asked to, was not required to, and did not address the choice of law issue presented in *Thomas.*

As a subsidiary point, *Bautista* also concluded that the alleged unconscionability of the seamen's arbitration agreements (due to the parties' unequal bargaining power) was not a viable affirmative defense **under Article II (3)** of the Convention. Ultimately, because the arbitration agreements met the Convention's jurisdictional requirements and were not "null and void" under Article II (3), the Eleventh Circuit upheld the district court's order compelling arbitration of the seamen's claims.

*Thomas* concerned a fundamentally distinct and unrelated issue: whether an arbitration agreement mandating the application of foreign law prospectively waived a seamen's statutory rights, as seemingly proscribed by the United States Supreme Court in *Mitsubishi,* and was therefore violative of public policy and "null and void" **under Article V(2)(B).** In *Bautista*, there was no discussion of, or even a tangential reference to, the issues addressed in *Thomas*. The conclusion in *Bautista* that an arbitration agreement in a seaman's employment contract meets the jurisdictional requirements of the Convention does not address, much less preclude, the ruling in *Thomas* that such arbitration agreements are invalid to the extent they prospectively waive a seaman's federal statutory remedies through the imposition of foreign law in an arbitral proceeding. The decisions concern the application of different affirmative defenses under the Convention, based on distinct issues of law. Therefore, *Bautista* is inapposite.

42

**F.    Subsequent to *Thomas*, this Honorable Court decided *Lindo v. NCL*, 652 F.3d 1257 (11th Cir. 2011). *Lindo*, however, is an advisory opinion not binding on this Court. Before the Eleventh Circuit issued its mandate in *Lindo*, the parties in *Lindo* settled and moved to voluntarily dismiss the appeal. Controlling precedent holds that when a case settles before the end of the appellate process, any opinion that has been produced should be vacated. The opinion in *Lindo* should therefore be vacated.**

In the Order Compelling Arbitration [R.E. Tab 4] the Court relied on *Lindo v. NCL*, 652 F.3d 1257 (11th Cir. 2011). Defendant also argued that *Lindo* – and not *Thomas* controlled the outcome of this case. However, <u>before</u> the Eleventh Circuit issued its mandate in *Lindo*, **the parties in *Lindo* settled**. *See* Parties' Agreed Motion to Dismiss Appeal with Prejudice and Notice of Settlement in *Lindo*, attached hereto as [R.E. Tab 7], dated October 3, 2011. *See also* Eleventh Circuit's Mandate in *Lindo*, issued **after the parties settled** on October 21, 2011, attached hereto as [R.E. Tab 8].

Controlling precedent holds that ["w]hen a case settles before the end of the appellate process, any opinion that has been produced should be vacated." *Flagship Marine Services, Inc. v. Belcher Towing Co.,* 23 F. 3d 341 (11th Cir. 1994). *See also Perez v. Globe Airport Security, Service, Inc.,* 294 F. 3d 1275 (11th Cir. 2002) (Court *sua sponte* vacated panel opinion which had issued before settlement); *Key Enterprises, Inc. v. Venice Hospital*, 9 F. 3d 893 (11th Cir. 1993):

> When the settling parties filed the joint motions, no case or controversy existed. Consequently, we no longer had jurisdiction over the issues presented and should have immediately dismissed the appeal … **we will not permit parties to a specific suit, or their counsel, through an**

**agreement or otherwise, to control our statement of the law … Given that nothing was at stake for any party after the settlement of this case, any opinion by this Court would be <u>purely advisory</u> –<u>an outcome precluded by the Constitution</u>.”**

*Id.,* (emphasis added).

In light of the above mentioned controlling precedent, the Eleventh Circuit should vacate the non-final panel opinion in *Lindo v. NCL (Bahamas)*, *Ltd.* Under *Key Enterprises*, *Lindo* is a **purely advisory opinion**, not binding on this Court.

i.    ***Lindo*** **was a panel opinion and therefore cannot purport to overturn *Thomas*. Pursuant to the prior panel precedent rule, *Thomas v. Carnival* is still the law of this Circuit: neither the Eleventh Circuit *en banc* nor the United States Supreme Court has overruled *Thomas*.**

*Lindo v. NCL (Bahamas)*, *Ltd.* cannot purport to overturn *Thomas v. Carnival*. Pursuant to the prior panel precedent rule neither the Eleventh Circuit *en banc* nor the United Supreme Court has overruled *Thomas*. *See Pavon v. Carnival Corporation*, 11-cv-23148-JAL (S.D. Fla. 2011) [D.E. 13]:

> The Court has once before remanded Plaintiff's Jones Act claims in this case to state court for disposition. *See Pavon v. Carnival Corporation*, 09-cv-22935-LENARD, Order Granting Defendants Motion for Reconsideration and Amending Order Remanding Case to State Court, D.E. 56. That Order was supported, in part, by the Eleventh Circuit's opinion in *Thomas v. Carnival Corp.*, 573 F. 3d 1113 (11th Cir. 2009). Defendant claims that the Eleventh Circuits recent opinion, *Lindo v. NCL (Bahamas), Ltd.*, 2011 WL 3795234 (11th Cir. Aug. 29, 2011), overrules *Thomas* and controls this case. Defendant's argument is premature as the Eleventh Circuit has not yet issued its mandate in *Lindo*. Consequently, this Court finds that Defendant lacks basis for re-removal of this action and therefore remand is proper. **The Court further notes that as a panel opinion, *Lindo* cannot overrule *Thomas* as the law of this Circuit**; that may only be done by the Eleventh Circuit *en banc*.

44

*Id.,* (Emphasis added). Judge Lenard's ruling in *Pavon*, is based on the prior panel

precedent rule. *See United States v. Archer,* 531 F. 3d 1347, 1352 (11th Cir. 2008):

> We acknowledge the strength of the prior panel precedent rule in this circuit. **Under that rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*.** *Smith v. GTE Corp.,* 236 F. 3d 1292, 1300 n. 8 (11th Cir. 2001); *Chambers v. Thompson,* 150 F. 3d 1324, 1326 (11th Cir. 1998). "While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point." *Garrett v. University of Alabama at Birmingham Bd. of Trustees,* 344 F. 3d 1288, 1292 (11th Cir. 2003)

*Id.,* at 1352. (emphasis added).

Thus, *Thomas v. Carnival*, 573 F. 3d 113 (11th Cir. 2009) is still the law of

this Circuit.

**ii.** ***Lindo* conflicts with *Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th Cir. 1998). *Lindo* further ignores controlling Supreme Court precedent in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1985); *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970)**

Even if, for the sake of the argument, *Lindo* was not an advisory opinion, but

binding on this Court, it is still inapposite as the *Lindo* majority decision failed to

follow (or even attempt to follow or even discuss) *Hellenic Lines Ltd. v. Rhoditis*,

398 U.S. 306 (1970) on the choice-of-law issue. Further, the conclusion reached by

the *Lindo* majority panel also conflicts with *Mitsubishi Motors Corp., v. Soler*

*Chrysler Plymouth, Inc,* 473 U.S. 614 (1985) and *Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th Cir. 1998).

In *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970), the Supreme Court spurned U.S. based ship owners' early attempts to avoid the remedies afforded to seafarer's by U.S. law. The *Rhoditis* Court held that these U.S. based ship owner-employers are governed by the Jones Act as a matter of law, and are not permitted to avoid their Jones Act obligations through the expediency of flagging their vessels in foreign countries. The high court made this choice-of-law decision despite the Greek seaman's employment contract which had been signed in Greece, which provided that Greek law and a Greek Collective Bargaining Agreement applied, and which provided that all claims arising out of the employment contract were to be adjudicated by a Greek court. ***Lindo* conflicts with this binding Supreme Court precedent.**

As set forth earlier, in *Mitsubishi Motors Corp.,* 473 U.S. 614 (1985), the Supreme Court announced that "in the event the choice-of-forum and choice-of-law clauses [were to] operate[] in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." *Id.,* at 639, n. 19. ***Lindo* conflicts with this binding Supreme Court precedent.**

46

Finally, as set forth earlier, in *Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th Cir. 1998), this Honorable Court declared that an arbitration agreement that 1) does not permit relief equivalent to court remedies, and 2) deprives an employee of any meaningful relief under a Federal statute; is unenforceable because it defeats the remedial purpose of the statute. ***Lindo* conflicts with the prior panel precedent set forth in *Paladino.***

**G.    If appellants are required to arbitrate their claims, they will no receive no award in the arbitral forum –given the U.S. based nature of their claims.**

As set forth above, if Plaintiffs are required to arbitrate their claims, because Norwegian law will apply, Plaintiffs will not receive no award in the arbitral forum –given the U.S. based nature of their claims. Therefore, Plaintiffs will have nothing to enforce in U.S. Courts, depriving them of any later opportunity to review.

Indeed, as the record in this case makes clear, the application of Norwegian law "deprives Plaintiffs of any hope of meaningful relief. " *Paladino v. Avnet Computer Technologies, Inc.,* 134 F. 3d 1054 (11th Cir. 1998). Therefore, there is no point – and no justice- in requiring Plaintiffs to go to arbitration, and then, upon a showing that they were deprived of all of their causes of action at arbitration, require them to come back to United States District Court to vacate the award.

As Judge Barkett has pointed out, interpreting the Convention on the Enforcement and Recognition of Foreign Arbitral Awards in this way, "would

47

require a court to compel arbitration in a dispute involving a sale of slaves, despite knowing full well that any resulting arbitral award would be unenforceable as a matter of public policy." *Lindo*, at 1288, *citing Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc.,* 723 F. 2d 155, 164 n. 9 (1st Cir.1983). "While this example may be extreme, it illustrates the absurdity and inefficiency of requiring a court to refer a matter to arbitration where it is apparent from the face of the agreement that any subsequent award would be unenforceable as a matter of public policy." *Id.*

Therefore, rather than require an injured seafarer to travel through this circuitous route; *Mitsubishi* (United States Supreme Court), *Thomas* and *Paladino* (Eleventh Circuit) allow the seafarer to challenge the enforcement of the arbitration agreement up front.

## CONCLUSION

For the reasons set forth above, the district court's order compelling arbitration should be reversed in its entirety.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7)

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains a word count of 12,865 words.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY,** that a true and correct copy of the foregoing was

furnished by electronic mail this 19th day of July, 2013 to: Scott Ponce, Esq.

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
Attorney for Plaintiff
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  (305)  373-3016
Facsimile: (305) 373-6204
cllinas@lipcon.com


By: *//s Carlos Felipe Llinás Negret*
CARLOS FELIPE LLINÁS NEGRET
FLA. BAR. NO. 73545

49