IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

NO. 13-12391-BB

_____

KENNETH DOWNER *et al.*,

Plaintiffs/Appellants,

vs.

ROYAL CARIBBEAN CRUISES LTD.,

Defendant/Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

_____

APPELLEE ROYAL CARIBBEAN CRUISES LTD.'S ANSWER BRIEF

_____


SANFORD L. BOHRER
SCOTT D. PONCE
Holland & Knight LLP
701 Brickell Avenue
Suite 3000
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)

Attorneys for Appellee
Royal Caribbean Cruises Ltd.

<u>CERTIFICATE OF INTERESTED PERSONS AND</u>
<u>CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Local Rule 26.1-1, counsel for Appellee Royal Caribbean Cruises Ltd. certifies that the following persons and entities have an interest in the outcome of this case:

Sanford L. Bohrer

Marcia G. Cooke, United States District Judge

Celebrity Cruises Inc.

Auzele Duane Dabrell

Kenneth Downer

Cliff Fitzpatrick

Holland & Knight LLP

Gregory Hughes

Fitzroy Lloyd Johnson

Lipcon, Margulies, Alsina, and Winkleman P.A.

Carlos Llinas

Stanley Armando Mullings

Scott D. Ponce

C-1 of 1

Pullmantur Cruises

Royal Caribbean Cruises Ltd.

Roan Drumond Scott

Michael Winkleman

Richard Graham Young

<u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee Royal Caribbean Cruises Ltd. does not request oral argument.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ................................................... C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CONTENTS........................................................................... ii

TABLE OF CITATIONS ........................................................................iv

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUES........................................................1

STATEMENT OF THE CASE........................................................1

SUMMARY OF THE ARGUMENT ....................................................10

ARGUMENT ........................................................................13

    I.    THE DISTRICT COURT WAS CORRECT IN FINDING THAT THE FIRST ELEMENT OF THE CONVENTION WAS SATISFIED ................................................................13

    II.    THE SEAFARERS CANNOT RAISE AWARD-ENFORCEMENT ISSUES AT THE ARBITRATION-ENFORCEMENT STAGE ................................................18

    III.    THE SEAFARERS' RELIANCE ON THE EFFECTIVE VINDICATION EXCEPTION IS MISPLACED ..............................20

IV.  *LINDO* IS A BINDING DECISION, NOT AN ADVISORY

OPINION ........................................................................................... 23

V.  THE SEAFARERS' ARGUMENT REGARDING A

SUBSEQUENT OPPORTUNITY FOR REVIEW FAILS ................ 25

CONCLUSION ......................................................................................... 25

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ..................................... 26

CERTIFICATE OF SERVICE .............................................................................. 26

TABLE OF CITATIONS

**Page**

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) ..................................21

*American Express Co. v. Italian Colors Restaurant*,

    133 S. Ct. 2304, __ U.S. __ (2013)...................................20

*Arauz v. Carnival Corp.*, 466 F.App'x. 815 (11th Cir. 2012).................................23

*Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005) .................................10, 23

*Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*,

    713 F.2d 618 (11th Cir. 1983) ...........................................14

*Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151 (11th Cir. 2009) ........................14

*Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286 (11th Cir. 2004)..........15, 16

*Fernandes v. Carnival Corp.*, 484 F. App'x 361 (11th Cir. 2012) .........................23

*Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970).............................................24

*Hill v. FTC*, 124 F.2d 104 (5th Cir. 1941) .............................................................14

*Hurth v. Mitchem*, 400 F.3d 857 (11th Cir. 2005)..................................................24

*Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257 (11th Cir. 2011)........ 7, 8, 14, passim

*Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285 (11th Cir. 1998).........10

*Lobo v. Celebrity Cruises Inc.*, 488 F.3d 891 (11th Cir. 2007)...............................13

*Maxwell v. NCL (Bahamas) Ltd.*, 454 F. App'x 709 (11th Cir. 2011) ...............8, 23

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,

    473 U.S. 614 (1985) ....................................................................20, 21

*Morrison v. Amway Corp.*, 323 F.3d 920 (11th Cir. 2003) ....................................24

*Paladino v. Avnet Computer Technologies, Inc.*,

    134 F.3d 1054 (11th Cir. 1998) ..........................................................19

*Quiroz v. MSC Mediterranean Shipping Co. S.A.*, __ F. App'x __,

    2013 WL 3185470 (11th Cir. June 24, 2013) ................................................19, 22

*Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009) ................................7, 8

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528 (1995) ..........21

*Walker v. Mortham*, 158 F.3d 1177 (11th Cir. 1998) .............................................24

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction under 28 U.S.C. §§1331 and 1333.

This Court has jurisdiction under 28 U.S.C. §1291. The district court's orders, in combination, were final because they compelled arbitration and dismissed Appellants' claims with prejudice.

The district court's order compelling arbitration was entered on May 31, 2012 (DE 40). The district court's order dismissing Appellants' claims was entered on May 24, 2013 (DE 55). Appellants filed their notice of appeal on May 28, 2013.

## STATEMENT OF THE ISSUES

Whether the district court was correct in compelling arbitration and dismissing Appellants' claims in favor of arbitration.

## STATEMENT OF THE CASE

### Course Of The Proceedings And Disposition Below

Appellants are Kenneth Downer, Richard Graham Young, Roan Drumond Scott, Cliff Fitz Patrick, Auzzie Duane Dabrell, Fitzroy Lloyd Johnson, Stanley Armando Mullings, and Gregory Hughes (collectively, the "Seafarers"). The Seafarers are current and former employees of Appellee Royal Caribbean Cruises Ltd. ("Royal Caribbean").

1

The Seafarers filed a six-count Complaint against Royal Caribbean seeking declaratory relief and money damages (DE 1). Each count of the Complaint was premised upon the Seafarers' employment and collective bargaining agreements.

The count for declaratory relief, Count I, sought a declaration that arbitration provisions contained in the Seafarers' employment and collective bargaining agreements were unenforceable to the extent they required the application of Norwegian law (Count I).

The counts for money damages, Counts II through VI, alleged that Royal Caribbean failed to pay the Seafarers the full amount of wages to which they were entitled under their employment and collective bargaining agreements, and asserted claims for unpaid wages and penalty wages under 46 U.S.C. §§10313(f) and (g) (Count II); unpaid wages and penalty wages under 46 U.S.C. §§10504(b) and (c) (Count III); breach of contract (Count IV); breach of the covenant of good faith and fair dealing (Count V); and "forced labor, peonage" under 18 U.S.C. §1595 (Count VI).

Royal Caribbean moved, pursuant to 9 U.S.C. §206 and Rule 12(b)(3) of the Federal Rules of Civil Procedure, for an order compelling arbitration and dismissing the Complaint in favor of arbitration (DE 11).

By order entered May 31, 2012, the district court (1) compelled arbitration, (2) stayed the action pending the outcome of arbitration, and (3) "closed" the case for administrative purposes (DE 40).

On June 4, 2012, the Seafarers filed a notice of appeal relating to the district court's order. That appeal was assigned case number 12-13001. Royal Caribbean moved to dismiss the appeal for lack of jurisdiction. By order dated October 10, 2012, this Court granted Royal Caribbean's motion and dismissed the appeal for lack of jurisdiction.

After the appeal was dismissed, the Seafarers filed a motion with the district court asking it to "lift the stay" or, alternatively, to certify for appellate review the order compelling arbitration (DE 48). The district court granted the motion, in that it lifted the stay and dismissed the Seafarers' claims (DE 55). That order was entered on May 24, 2013 (*Id.*), and the Seafarers filed their notice of appeal on May 28, 2013 (DE 56).

## Statement Of The Facts

*The Sign-On Employment Agreements
And The Collective Bargaining Agreements*

The Seafarers work or worked as stateroom attendants aboard cruise ships operated by Royal Caribbean (DE 1, ¶¶8-10). As stateroom attendants, the Seafarers were responsible for cleaning passengers' staterooms (*Id.*). The

3

Seafarers' claims against Royal Caribbean arise from the Seafarers' employment with Royal Caribbean from May 27, 2008 through the filing of the Complaint, which was in May 2011 (the "Relevant Period") (DE 1, ¶20).

The Seafarers *admitted in the Complaint* that throughout the Relevant Period they executed identical Sign-On Employment Agreements ("SOEAs") in connection with their employment (DE 1, ¶¶11-12, 20, 31-35, 51-52, 64-65, 77-79, 88-90).  The Seafarers also *admitted in the Complaint* that the SOEAs:

- set each employee's Monthly Total Guaranteed Pay, including Guaranteed Overtime;

- contained a mandatory arbitration provision; and

- incorporated the terms of collective bargaining agreements that were negotiated at arms' length by Royal Caribbean and the Seafarers' union, the Norwegian Seafarers' Union (*Id.*).

Royal Caribbean attached to its motion examples of the SOEAs referred to in the Complaint so that the district court could see what they looked like instead of merely reading the Seafarers' descriptions of them (DE 11-2 through 11-3).

As relevant to this appeal, one aspect of the arbitration provision contained in the SOEAs changed during the Relevant Period.  From the beginning of the Relevant Period through approximately July 2009, the arbitration provision did *not* specify the law to be used in arbitration (DE 11-1, ¶11; DE 11-2). The arbitration provision in effect from approximately July 2009 through the end of the Relevant

4

Period, however, provided that Norwegian law would apply in arbitration (DE 1, ¶32; DE 11-1, ¶12; DE 11-3).

As mentioned above, the Seafarers admitted in the Complaint that the SOEAs incorporated the terms of collective bargaining agreements (DE 1, ¶12, 20, 33-35, 51-52, 64-65, 77-79, 90). The Seafarers also *admitted in the Complaint* that the collective bargaining agreements set the amount of the Seafarers' wages ***and*** contained a mandatory arbitration provision (*Id.*). Copies of the collective bargaining agreements in effect during the Relevant Period were attached to Royal Caribbean's motion (DE 11-5; DE 11-6).

As was the case with the SOEAs, and as relevant to this appeal, one aspect of the arbitration provision contained in the <u>collective bargaining agreements</u> changed during the Relevant Period. The collective bargaining agreement that was in effect from the beginning of the Relevant Period through June 30, 2009 (the "2008 CBA") provided that Florida law would govern the interpretation of that agreement (DE 11-5, Article 37). The collective bargaining agreement that was in effect from July 1, 2009 through the end of the Relevant Period (the "2009 CBA") provided that any dispute or grievance would be governed by Norwegian law (DE 11-6, Article 35(e)).

5

*The Seafarers' Complaint And Royal Caribbean's Motion*

The Seafarers' Complaint sought declaratory relief and money damages (DE 1). Every claim in the Complaint was premised upon the SOEAs and collective bargaining agreements.  The Seafarers' claim for declaratory relief sought a declaration that the arbitration provisions contained in the SOEAs and collective bargaining agreements were unenforceable to the extent they provided for the application of Norwegian law (Count I).[1]  The Seafarers' claims for money damages were brought under various statutory and common law theories of liability, each seeking recovery on allegations that Royal Caribbean failed to pay the Seafarers the full amount of wages to which they were entitled under the SOEAs and collective bargaining agreements (Counts II-VI).[2]

---

[1] The Complaint failed to acknowledge that some of the SOEAs in effect during the Relevant Period were silent as to the applicable law, and that the 2008 CBA specified the application of Florida law.

[2] Although it is not relevant to any issue implicated by this appeal, the Seafarers – in an attempt to enrage the Court – repeatedly write in their initial brief that there were months in which they (or putative members of their proposed class) were paid only $50 per month because they worked in a "back of the house" position. That is breathtakingly false. The collective bargaining agreements set a minimum Monthly Total Guaranteed Pay for stateroom attendants. It was $993 in the 2008 CBA, and $1,050 in the 2009 CBA (DE 11-5, Article 9(E); DE 11-6, Article 9(E)).  Of those amounts, Royal Caribbean paid the first $50, with the remainder coming from gratuities left by passengers (DE 11-5 (page 46 of 85); DE 11-6 (page 49 of 50)). If, in any month, passenger gratuities were insufficient to reach the Monthly Total Guaranteed Pay – either because passengers simply did not leave much in gratuities or because an employee was working in a "back of the house" position –

6

Royal Caribbean moved, pursuant to 9 U.S.C. §206 and Rule 12(b)(3) of the Federal Rules of Civil Procedure, for an order compelling arbitration and dismissing the Complaint in favor of arbitration (DE 11). Royal Caribbean argued that the parties' agreement to arbitrate was governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "Convention"), and its implementing legislation, 9 U.S.C. §§202-208 (the "Convention Act"), and there was no basis for the district court to decline enforcement of the arbitration provisions.

In response to the motion, the Seafarers primarily argued that because they had asserted federal statutory claims – and because the later SOEAs and 2009 CBA specified the application of Norwegian law – enforcement of the arbitration provisions would violate the public policy of the United States, as held in *Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009) (DE 20).

### The Decision In Lindo And The District Court's Order

After Royal Caribbean's motion was fully briefed – but before the district court ruled upon it – this Court issued its decision in *Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257 (11th Cir. 2011).

---

then Royal Caribbean paid the difference (DE 11-5, Article 9(E)(5); DE 11-6 Article 9(E)(7)). The notion that anyone was paid only $50 per month – or $1.67 per day, as the Seafarers alternatively phrase it – is ludicrous.

As relevant here, *Lindo* held that (1) "even if a contract expressly says that foreign law governs . . . courts should not invalidate an arbitration agreement at the arbitration-enforcement stage on the basis of speculation of what the arbitrator will do, as there will be a later opportunity to review an arbitral award;" (2) *Thomas* violated prior panel precedent by expanding the scope of the Convention's "null and void defense;" and (3) the Convention's public policy defense is inapplicable at the arbitration-enforcement stage.  *See id.* at 1269, 1277-82.

Royal Caribbean brought *Lindo* to the district court's attention (DE 30), and the district court stayed the action pending resolution of the petition for rehearing in *Lindo* (DE 32).

Once the petition for rehearing in *Lindo* was resolved, Royal Caribbean alerted the district court that, under the terms of its prior order, the stay should be lifted and Royal Caribbean's motion should be ruled upon (DE 33).  The district court declined to lift the stay, and instead continued the stay pending the resolution of a petition for rehearing that had been filed with this Court in *Maxwell v. NCL (Bahamas) Ltd.*, Case No. 11-12257 (DE 38).  In *Maxwell*, the Court followed *Lindo*, and not *Thomas*, because *Thomas* "violated our prior panel precedent rule." *See Maxwell*, 454 F. App'x 709, 710 (11th Cir. 2011).

Once the petition for rehearing in *Maxwell* was denied, Royal Caribbean alerted the district court that, under the terms of its second order, the stay should be lifted and Royal Caribbean's motion should be ruled upon (DE 39).

Two weeks later, the district court entered its order on Royal Caribbean's motion (DE 40). The district court found that each of the prerequisites to the application of the Convention was satisfied and, under *Lindo*, public policy was not a valid defense at the arbitration-enforcement stage. As such, the district court ordered:

> . . . the Defendant's Motion to Compel Arbitration and to Dismiss (ECF No. 11) is **GRANTED**. The parties are ordered to resolve this dispute through binding arbitration in accordance with the Employment Agreements and the CBA. This case is **STAYED** pending the outcome of the parties' arbitration. The Clerk is directed to ***administratively* CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*. (emphasis and all capitals in original).

*The Appeal Is Dismissed For Lack of Jurisdiction,*
*And The Seafarers Opt For More Litigation Instead Of Arbitration*

The Seafarers appealed the district court's order (DE 41). The appeal was assigned case number case number 12-13001. Royal Caribbean moved to dismiss the appeal for lack of jurisdiction and, by order dated October 10, 2012, this Court granted the motion and dismissed the appeal.

Instead of proceeding to arbitration, the Seafarers returned to the district court for the purpose of attempting to obtain an order they could immediately

9

appeal.    To that end, the Seafarers filed a motion seeking the entry of an order "lifting the stay" or, alternatively, certifying for appellate review the order compelling arbitration (DE 48).  The district court granted the Seafarers' motion, in that it lifted the stay and dismissed their claims (DE 55).  This appeal followed.

## Standard of Review

"We review *de novo* the district court's order to compel arbitration."  *See Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005).  A district court's order dismissing an action on the basis of an arbitration provision contained in an "international agreement" is reviewed *de novo*.  *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290-91 (11th Cir. 1998).

## SUMMARY OF THE ARGUMENT

The district court was correct in finding that the Convention's first element – which requires the existence of an agreement to arbitrate – was satisfied here.  The Seafarers admitted in their Complaint that the employment agreements (the SOEAs) they executed throughout the Relevant Period contained a mandatory arbitration provision.  The Seafarers also admitted in the Complaint that their employment agreements incorporated by reference collective bargaining agreements that, in turn, contained a mandatory arbitration provision.  The Seafarers' admissions in this regard established the first element and obviated the

10

need for Royal Caribbean to introduce SOEAs executed by each Seafarer during the Relevant Period.

The Seafarers argue that the rule regarding judicial admissions does not apply in the context of the Convention, but there is no authority supporting that argument.

The Seafarers argue that their admissions are not binding because they were "affirmative defenses" that were pleaded "in the alternative," but that is not true. Every claim in the complaint was premised upon the Seafarers' allegations that Royal Caribbean failed to pay them the full amount of wages to which they were entitled under the SOEAs and collective bargaining agreements.  Thus, the Seafarers *had* to admit that they signed and were bound by the SOEAs and collective bargaining agreements.  Otherwise, they would have no claims.

The Seafarers argue that the fact Royal Caribbean's employment agreements contain arbitration provisions does not establish that the Seafarers actually signed the employment agreements.  The Seafarers also argue that a declaration attached to Royal Caribbean's motion to compel arbitration was insufficient to satisfy the first element of the Convention.  These arguments fail because the district court did not rule that this element of the Convention was satisfied by either of those things. The district court ruled that the element was satisfied because the Seafarers admitted in the Complaint that they signed the employment agreements.

11

Recognizing that the first element of the Convention was established, the Seafarers make numerous arguments – from numerous angles – that the Convention's "public policy defense" should have stopped the district court from compelling arbitration. The basis of each argument is that compelling arbitration here violates the public policy of the United States because the later SOEAs and the 2009 CBA select Norwegian law, and the application of Norwegian law at arbitration could deprive them of rights and remedies otherwise available to them under federal statutes. All of their arguments in this regard fail.

Some of the Convention's defenses may be raised only at the arbitration-enforcement stage (when a party seeks to compel arbitration), and others may be raised only at the award-enforcement stage (when a party seeks to confirm or otherwise enforce an arbitration award). This Court and the United States Supreme Court have clearly and repeatedly written that the Seafarers' argument – which falls within the Convention's "public policy defense" – may be raised *only* at the award-enforcement stage. The district court did not err in following those decisions and ruling that the Seafarers' public policy argument could not be raised at the arbitration-enforcement stage and was not a basis for declining to compel arbitration.

The Seafarers' final argument is that if Norwegian law is applied at arbitration, then they will receive no award and there will be no subsequent

12

opportunity for a court to consider their public policy arguments. This Court has previously rejected this argument, and there is no basis for reaching a different result here.

## ARGUMENT

## I. THE DISTRICT COURT WAS CORRECT IN FINDING THAT THE FIRST ELEMENT OF THE CONVENTION WAS SATISFIED.

Four elements must be satisfied for the Convention to apply. *See Lobo v. Celebrity Cruises Inc.*, 488 F.3d 891, 894 n.3 (11th Cir. 2007) (listing the four elements). The only element at issue here is the first, which requires the existence of an agreement to arbitrate. *See id*. The Seafarers argue that this element was not satisfied because Royal Caribbean did not submit executed SOEAs for each Seafarer (Brief, pp. 16-30). The Seafarers are wrong.

The Seafarers admitted in their Complaint that throughout the Relevant Period they executed SOEAs containing an arbitration provision mandating that disputes relating to the payment of wages be submitted to arbitration (DE 1, ¶¶11-12, 20, 31-35, 51-52, 64-65, 77-79, 88-90). The Seafarers also admitted in their Complaint that their SOEAs incorporated the terms of collective bargaining agreements which, in turn, contained an arbitration provision mandating that disputes relating to the payment of wages be submitted to arbitration (*Id.*).

13

Indeed, the Seafarers *had* to admit that they signed and are bound by the SOEAs and collective bargaining agreements – which, as they concede, contain mandatory arbitration provisions – because the Seafarers' claims are premised upon the portions of those agreements establishing and governing the amount and payment of the Seafarers' wages. *See, e.g., Lindo*, 652 F.3d at 1284 ("Lindo cannot obtain the advantages of his union-negotiated Contract, while rejecting what he now perceives as its disadvantages.").

As the district court correctly found (DE 40, p. 3 n.1), the Seafarers' admissions conclusively established the first element of the Convention – the existence of an agreement to arbitrate – and obviated the need for Royal Caribbean to offer any proof on the issue. *See, e.g., Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983):

> This conclusion is consistent with the general rule that a party is bound by the admissions in his pleadings. . . . In *Hill v. FTC*, [124 F.2d 104, 106 (5th Cir. 1941)], the Court of Appeals for the Fifth Circuit stated, "judicial admissions are proof possessing the highest possible probative value. Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them."

*Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1177-78 (11th Cir. 2009) (citing and quoting *Best Canvas*, 713 F.2d at 621).

14

The Seafarers make five arguments in an attempt to avoid the effect of their judicial admissions.  Each argument fails.

First, the Seafarers argue that various decisions, including *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286 (11th Cir. 2004), stand for the proposition that Royal Caribbean could satisfy the first element *only* by providing the district court with copies of SOEAs signed by each Seafarer (Brief, pp. 16-22).  This argument fails because in none of those cases did the party resisting arbitration *admit* in his/her pleading to having signed contracts containing mandatory arbitration provisions.  The admissions that the Seafarers made in the Complaint render those decisions inapposite.

Second, the Seafarers argue (again citing *Czarina*) that the rule regarding judicial admissions does not apply in the context of the Convention and cannot be used to establish the first element of the Convention. (Brief, pp. 22-24).  Nothing in *Czarina* or any other decision holds any such thing.

Third, the Seafarers argue that to the extent their admissions were contained in Count I of the Complaint – which sought a declaration that the arbitration provisions are "void as against public policy" (DE 1, ¶30) – they should not be bound by those admissions because they were "pleaded as an [affirmative] defense in the alternative" (Brief, pp. 24-25).  This argument fails at the outset because the

15

Seafarers do not cite any decision or rule of procedure classifying allegations in a complaint as affirmative defenses.

Regardless, there is no basis for the notion that the Seafarers were pleading those admissions "in the alternative" (*Id.*, p. 25).   The Seafarers were *not* alternatively or hypothetically pleading that they signed and were bound by the SOEAs and collective bargaining agreements.   As mentioned above, the Seafarers *had* to admit they signed and are bound by those documents because they are the contracts upon which the entire Complaint is based. If the Seafarers are not parties to and bound by those contracts, then they have no claims.

Put another way, the Seafarers cannot admit that they signed and are bound by the SOEAs and collective bargaining agreements to the extent those contracts' terms establish their entitlement to wages, but deny signing and being bound by those same contracts when it comes to their provisions requiring arbitration. *See Lindo*, 652 F.3d at 1284 ("Lindo cannot obtain the advantages of his union-negotiated Contract, while rejecting what he now perceives as its disadvantanges.").

Fourth, the Seafarers cite an unpublished district court order for the proposition that the fact "Royal Caribbean drafts contracts with arbitration provisions . . . does not conclusively establish that the Seafarers . . . in fact signed

16

such arbitration agreements" (Brief, pp. 25-26).  This argument ignores the district court's order and the facts alleged in the Complaint.

The district court did *not* rule that the first element of the Convention was satisfied because Royal Caribbean's employment contracts contain arbitration provisions or because its policies require employees to sign contracts containing arbitration provisions.  Instead, the district court found that the element was satisfied because the Seafarers admitted in the Complaint that they signed employment contracts containing an arbitration provision and incorporating by reference the collective bargaining agreements' arbitration provisions.

Fifth, the Seafarers argue that the declaration of Salvatore Faso (DE 11-1), which was attached to Royal Caribbean's motion, was insufficient to satisfy this element (Brief, pp. 26-28).  This argument, like the one just discussed, fails because it ignores the district court's ruling and the facts alleged in the Complaint.  The district court did *not* rule that Mr. Faso's declaration satisfied the element.  It ruled that the element was satisfied because the Seafarers admitted they signed and were bound by contracts containing mandatory arbitration provisions.  Mr. Faso's declaration merely attached examples of the SOEAs referred to in the Complaint, so that the district court could see what they looked like instead of merely reading the Seafarers' descriptions of them, and authenticated the collective bargaining agreements.

17

The district court was correct in finding that the first element of the Convention was satisfied.

## II.   THE SEAFARERS CANNOT RAISE AWARD-ENFOREMENT ISSUES AT THE ARBITRATION-ENFORCEMENT STAGE.

*Lindo* extensively analyzes the distinction between defenses under the Convention that are permitted to be raised at the arbitration-enforcement stage (when a party is seeking to compel arbitration) and those that may be raised at the award-enforcement stage (when a party is seeking to confirm or enforce an arbitration award).  *See Lindo*, 652 F.3d at 1262-64.

*Lindo* holds that the issue of whether an arbitration provision's selection of foreign law violates U.S. public policy by displacing federal statutory claims or rights is a defense that may be raised *only* at the award-enforcement stage, and <u>not</u> at the arbitration-enforcement stage.  *See id.* at 1269, 1277-82.  The Court reached this holding after surveying decisions from the United States Supreme Court and explaining that, under those decisions, "even if a contract expressly says that foreign law governs . . . courts should not invalidate an arbitration agreement at the arbitration-enforcement stage on the basis of speculation of what the arbitrator will do, as there will be a later opportunity to review an arbitral award."  *See id*. at 1269.

18

Despite the holding in *Lindo*, the Seafarers argue that the district court erred in compelling arbitration because the later SOEAs and the 2009 CBA provide for the application of Norwegian law and, according to the Seafarers, Norwegian law does not recognize their rights under the Seaman's Wage Act or provide similar remedies as those available under the Act (Brief, pp. 28-35). The Seafarers rely upon *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir. 1998) as support for this attempt to raise at the arbitration-enforcement stage an issue that *Lindo* says may be raised only at the award-enforcement stage. Their reliance upon *Paladino* is misplaced.

*Paladino* did not involve the Convention, and it did not address whether the Convention's public policy defense may be raised at the arbitration-enforcement stage. Additionally, the arbitration provision in *Paladino*, 134 F.3d at 1061-62 – which prohibited the arbitrator from awarding money damages or equitable relief, and required the employee to pay up to one-half of the costs of arbitration – bears absolutely no resemblance to the arbitration provisions at issue here. *See, e.g., Quiroz v. MSC Mediterranean Shipping Co. S.A.*, __ F. App'x __, 2013 WL 3185470 at *7 (11th Cir. June 24, 2013) ("*Paladino* involved enforcement of an agreement to arbitrate under the Federal Arbitration Act and declared unenforceable an agreement mandating arbitration of federal statutory claims for which the employee could not recover damages. In contrast with *Paladino*,

19

Quiroz's agreement is enforceable under the Convention and does not limit the authority of the arbitrator to grant Quiroz meaningful relief.  If the application of Panamanian law deprives Quiroz of a remedy, he can raise his defense about public policy in an action to enforce the arbitral award.  *See Lindo*, 652 F.3d at 1263.") (additional internal citation omitted).

The district court did not err in compelling arbitration.

## III.  THE SEAFARERS' RELIANCE ON THE EFFECTIVE VINDICATION EXCEPTION IS MISPLACED.

The Seafarers argue that the "effective vindication exception" should have prevented the district court from compelling arbitration because the later SOEAs and 2009 CBA provide for the application of Norwegian law (Brief, pp. 36-38). The Seafarers are wrong because they are again ignoring the issue of *when* a public policy defense based on an arbitration provision's selection of foreign law may be raised.

"The 'effective vindication' exception to which [the Seafarers] allude originated as dictum in *Mitsubishi Motors* [*Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)], where we expressed a willingness to invalidate, on 'public policy' grounds, arbitration agreements that operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies."  *See American Express Co.*

20

*v. Italian Colors Restaurant*, __ U.S. __, __ (2013) (slip op., at 6) (alterations in original) (full citation added).

That passage – which is what the Seafarers cite in their brief – says nothing about when, if ever, the effective vindication exception may be invoked. In other words, the issue that is relevant here is whether (if ever) the effective vindication exception comes into play at the arbitration-enforcement stage or the award-enforcement stage. The Supreme Court has addressed this issue, and the Supreme Court's handling of this issue was analyzed in *Lindo*, 652 F.3d at 1266-69. However, because the Seafarers do not like the results of that analysis, they chose not to mention it in their Brief.

In *Mitsubishi*, 437 U.S. at 637 n.19, a party raised the issue of whether the arbitration panel would read and apply a foreign choice of law provision to "wholly . . . displace American law even where it would otherwise apply." The Supreme Court wrote that it had "no occasion to speculate on this matter at this stage of the proceedings, when Mitsubishi seeks to enforce an agreement to arbitrate, not to enforce an award." *See id.*

In two subsequent decisions, the Supreme Court again wrote that it would be premature to resolve at the arbitration-enforcement stage the issue of a prospective waiver of federal rights due to the selection of foreign law. *See Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540-41 (1995); *14 Penn Plaza*

21

*LLC v. Pyett*, 556 U.S. 247, 273-74 (2009) ("Resolution of this question at this juncture would be particularly inappropriate in light of our hesitation to invalidate arbitration agreements on the basis of speculation.").

As this shows, although the Supreme Court has mentioned, in dicta, an effective vindication exception, it has never invalidated an arbitration agreement on that basis and has made clear that courts have no occasion to deal with the issue at the arbitration-enforcement stage.  The effective vindication exception is of no use to the Seafarers.

The Seafarers also argue that the district court erred when it did not follow *Thomas*, and instead ruled that, under *Lindo* and *Bautista*, the public policy defense could not be raised at the arbitration-enforcement stage (Brief, pp. 38-42).  They argue that "*Bautista* and *Thomas* concerned fundamentally distinct and unrelated issues.  Therefore, *Bautista* is inapposite" (Brief, p. 40).  They are wrong.

This Court held in *Lindo* that *Thomas* "violate[d]" *Bautista* by permitting the Convention's public policy defense to be asserted at the arbitration-enforcement stage instead of limiting its applicability to the award-enforcement stage.  *See Lindo*, 652 F.3d at 1278;[3] *see also Quiroz*, 2013 WL 3185470 at *6 (same);

_____

[3] More specifically, *Thomas* violated *Bautista* because it expanded the scope of the Convention's "null and void" defense.  That defense, which may be raised at the arbitration-enforcement stage, is confined to "standard breach-of-contract

*Fernandes v. Carnival Corp.*, 484 F. App'x 361, 362 (11th Cir. 2012) (same); *Maxwell*, 454 F. App'x at 710 (same).   In light of the holding in *Lindo* – and this Court's subsequent decisions following *Lindo* – the Seafarers cannot seriously contend that *Bautista* and *Thomas* address different issues and are able to peacefully coexist.  The district court did not err in following *Bautista* and *Lindo*.

## IV.    *LINDO* IS A BINDING DECISION, NOT AN ADVISORY OPINION.

In apparent recognition that *Lindo* means they cannot raise the public policy defense at the arbitration-enforcement stage, the Seafarers argue that *Lindo* is a non-binding advisory opinion (Brief, pp. 43-47).   Their attack on *Lindo* is misguided.

First, they argue that *Lindo* is an advisory opinion because the parties settled before the mandate issued which, according to them, means that the decision in *Lindo* should have been vacated.  Even if that were true, the fact remains that "*Lindo* was not vacated and remains binding precedent in this circuit."  *See Arauz v. Carnival Corp.*, 466 F. App'x 815, 817 (11th Cir. 2012).

---

defenses" and "must be interpreted to encompass only those situations-such as fraud, mistake, duress, and waiver-that can be applied neutrally on an international scale."  *See Bautista*, 396 F.3d at 1302.  The seafarer's argument in *Thomas* – that the selection of foreign law might eliminate U.S. statutory claims – was outside the scope of the null and void and, as such, could not be raised at the arbitration-enforcement stage.

Second, they argue that under the prior panel precedent rule, the panel decision in *Lindo* could not "overturn" the panel decision in *Thomas*; thus, *Thomas* "is still the law of this Circuit."  This argument fails because it ignores that *Lindo* did not overturn *Thomas*; it followed the earlier decision in *Bautista*, with which *Thomas* conflicted.  *See Lindo*, 652 F.3d at 1278.  In this situation – where there was a conflict between an earlier (*Bautista*) and later (*Thomas*) panel decision – the panel in *Lindo* was required to follow *Bautista* under "the 'earliest case' rule, 'meaning when circuit authority is in conflict, a panel should look to the line of authority containing the earlier case, because a decision of a prior panel cannot be overturned by a later panel.'"  *See Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003) (quoting *Walker v. Mortham*, 158 F.3d 1177, 1188 (11th Cir. 1998)); *see also Hurth v. Mitchem*, 400 F.3d 857, 862 (11th Cir. 2005) ("This is but another way of saying that where two or more decisions of this Court are inconsistent, we follow the earliest one").

Third, they recycle their argument that *Lindo* conflicts with *Mitsubishi* and *Paladino* because it compelled arbitration despite the selection of foreign law. This argument fails for the reasons addressed above.

Fourth, they argue that *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970) highlights the importance of permitting seafarers to assert claims under U.S. law.

24

This argument fails because nothing about *Rhoditis* implicates a defense that the Convention permits to be raised at the arbitration-enforcement stage.

*Lindo* is a binding decision that the district court was required to follow.

## V.    THE SEAFARERS' ARGUMENT REGARDING A SUBSEQUENT OPPORTUNITY FOR REVIEW FAILS.

The Seafarers' final argument is that if foreign law is applied at arbitration, then they will receive no award and there will be no subsequent opportunity for review (Brief, pp. 47-48).  This argument was rejected in *Lindo*, 652 F.3d at 1279-80, and should be rejected here.  There is no basis for reaching a different result.

### CONCLUSION

For these reasons, the district court's order compelling arbitration should be affirmed.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Appellee
701 Brickell Avenue
Suite 3000
Miami, Florida 33131
(305) 374-8500
(305) 789-7799 (facsimile)


By:  /s/ Scott D. Ponce
     Sanford L. Bohrer (FBN 160643)
     Scott D. Ponce (FBN 0169528)

25

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 5,428 words, excluding the parts of the brief excluded by Rule 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.


By:  /s/ Scott D. Ponce

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of August 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System.


By:  /s/ Scott D. Ponce


#25348628_v1


26